563 So.2d 1086 (1990)
Sandra HEBERLING, As Personal Representative of the Estate of Latisha Heberling, Deceased, Appellant/Cross Appellee,
v.
Joel FLEISHER, M.D., Philip C. Weimer, M.D. & P.A., Stephen Z. Gervin, M.D. and Stephen Z. Gervin, M.D., P.A., Appellees/Cross Appellants, and
Gateway Hospital Corporation D/B/a Pembroke Pines General Hospital and the Florida Patients' Compensation Fund, Appellees.
Nos. 88-0471, 88-1702, and 88-2850.
District Court of Appeal of Florida, Fourth District.
May 30, 1990.
Rehearing and Certification Denied August 3, 1990.
Larry Klein and Barbara J. Compiani of Klein & Walsh, P.A., West Palm Beach, and Howard Barwick of Barwick, Dillian, Lambert & Angel, P.A., Miami Shores, for appellant/cross appellee.
Rhea P. Grossman of Rhea P. Grossman, P.A., Miami, and Lanza, O'Connor, Armstrong, Sinclair & Tunstall, P.A., Coral Gables, for appellee/cross appellant-Joel Fleisher, M.D.
Shelley H. Leinicke of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Fort Lauderdale, for appellee/cross appellant-Philip C. Weimer, M.D. & P.A.
Alan D. Sackrin of Klein & Tannen, P.A., North Miami Beach, for appellee/cross appellant-Stephen Z. Gervin, M.D. & P.A.
Jay Cohen of Atkinson, Jenne, Diner, Stone & Cohen, Hollywood, for appellee-Florida Patients' Compensation Fund.
Christopher Lynch of Adams, Hunter, Angones, Adams, Adams & McClure, Miami, for appellee-Pembroke Pines Gen. Hosp.
LETTS, Judge.
During a medical malpractice jury trial, which resulted in a defense verdict, the court below denied the plaintiff's request *1087 to call a neurosurgeon as a rebuttal witness. We reverse. We also hold that the admission of evidence as to the deceased plaintiff's blood alcohol level was, likewise, error.
The defense theory was that the deceased sustained irreversible and inevitably fatal head injuries, regardless of medical diagnosis or treatment, because of the high-speed bridge abutment crash of the fiberglass automobile in which she was a passenger. By contrast, the plaintiff contended that the deceased bled to death because of a negligently treated ruptured spleen.
During the presentation of the defense, evidence and testimony from three doctors was admitted to show that the diffuse axonal brain injuries suffered would have inevitably caused death and that the deceased was brain-dead as a result of the impact. Thereafter, the plaintiff sought to present rebuttal testimony from Doctor Barrett, a listed expert witness and neurosurgeon, who would have disputed that the brain damage was the cause of death. However, the trial court disallowed it on the basis that the rebuttal would be cumulative and should have been presented during the plaintiff's main case.
We begin by agreeing that the admission or exclusion of rebuttal testimony is not normally an abuse of discretion. Dale v. Ford Motor Co., 409 So.2d 232 (Fla. 1st DCA 1982). However, we do not believe that this general rule stands for the proposition that the plaintiff must disprove all anticipated defenses in its main case  that is exactly what rebuttal is supposed to accomplish. See Buchanan v. State, 95 Fla. 301, 116 So. 275, 279 (1928); W. Hicks, Trial Handbook for Florida Lawyers § 104 (The Lawyers Co-operative Publishing Co., 2d ed. 1982). In the case at bar, the plaintiff had to meet the initial burden of proof to establish negligent diagnosis or treatment on the part of the defendants. Unarguably, it did that much. The defense posture that in actuality the deceased died from brain injuries suffered in the crash was entirely proper, but we agree that the plaintiff had a right to attempt to rebut it and present evidence that the brain injury was not the cause of death. See Ahearn v. Florida Power and Light Company, 113 So.2d 751 (Fla. 2d DCA 1959), quashed on other grounds, 118 So.2d 21 (Fla. 1960). We have reviewed Rhodes v. Asplundh Tree Expert Co., 528 So.2d 459 (Fla. 3d DCA 1988), and agree that in Rhodes the rebuttal may well have been cumulative. The rebuttal sub judice was not cumulative, since no evidence of its subject matter had been offered by the plaintiff prior to the presentation by the defense of the brain damage theory.
The defense points out that the plaintiff, by way of depositions, knew perfectly well for over a year before trial that the defense posture would be that brain damage caused the death. However, while this is undeniably true, it is also plain from the record that the question of whether the defense's brain damage evidence would be admissible at trial was hotly contested. The microscopic slides of brain tissue were never actually entered into evidence by the defense and their authenticity and reliability was a principal bone of contention. In effect, the defense argues that the plaintiff should have opened the door to the brain damage theory when presenting its case in chief and should have discredited that anticipated defense. Yet, the plaintiff hoped to have this same defense excluded from consideration by the jury, and it would have been very poor tactics, under the facts here, to open the very door which it sought to keep shut and locked.
We next address the question of the admission of the test results of the deceased's blood-alcohol level. In fact, the test revealed a blood-alcohol level well below intoxication (only.03%), and the treating physician admitted that that alcohol level did not influence his diagnosis or treatment. The defense argues that the results of the test were not available at the time of treatment and that they might have played a part in the treatment, and/or the death, had the level of alcohol been excessive. However, although the test result confirming no intoxication was well known to the defense before trial, the lawyer for *1088 one of the defendants said to the jury during opening statement:
Without belaboring a point I know I had brought up some mention of alcohol early in my voir dire.
The reason is because you're going to probably find out that [the deceased] had about, what they say in the law, had enough alcohol that would make her approximately half intoxicated.
And this effect of alcohol, the doctor is going to tell you, has a deleterious effect on her ability to recover, because what it does, alcohol dilates the vessels and keeps the vessels from transporting the blood that needs to go to the brain.
And they're going to tell you this had an effect on her ability to recover and why she never regained consciousness.
In fact, the defense experts did not so testify at trial causing the court to voice obvious displeasure over having earlier denied the motion in limine to exclude the results of the test:
THE COURT: Let me tell you what's bothering me at this point in time. There was vigorous objection to discussion about the alcohol content found in the patient during the course of the emergency room treatment.
My ruling was that that information would be relevant if it influenced diagnosis and treatment.
Dr. Weimer has now testified that he didn't have the information at his disposal and it did not influence his diagnosis and treatment.
I feel  and I specifically put that question to defense counsel again at side[-]bar when Tom brought up the issue, and I said if it bears upon diagnosis and treatment  and I feel as though the information concerning the alcohol issue was inappropriately submitted to this jury, because it's clear from Dr. Weimer's testimony it did not influence diagnosis and treatment.
It may be relevant in the testimony of the experts when they analyze the records, but it was not relevant to Dr. Weimer's testimony.
I feel as though the Court was misled.
The deceased was not drunk, not driving and was unaffected by her blood alcohol level. Accordingly, the admission of evidence as to that alcohol level was totally irrelevant. As to the argument on appeal that the error, if any, was harmless, we might be reluctant to reverse this cause on this ground alone. However, since we are reversing for a new trial anyway, we wish to avoid any repetition of this error. So far as we can determine, the sole and only conceivable explanation for this evidence was in order to bring out that the underage deceased had had a drink. Such was an obvious and unfortunate attempt to prejudice the jury.
No other point on appeal raises reversible error.
REVERSED AND REMANDED FOR A NEW TRIAL.
GARRETT, J., concurs.
GLICKSTEIN, J., dissents with opinion.
GLICKSTEIN, Judge, dissenting.
I would affirm.
Neither the majority opinion nor appellant's reply brief address the discussion in the brief of appellees Gervin and Florida Patient's Compensation Fund upon the issue of claimed error in not allowing a rebuttal witness. That brief points out the trial court gave two reasons for not permitting the "rebuttal" witness.
The first reason was that appellant did not identify in answer to expert witness interrogatories that the witness would testify to those matters contained in the proffer of his rebuttal testimony, i.e., that one cannot diagnose diffuse axonal injury from the tissue slides. Appellees point out some reasonable supportive thoughts on this point which I feel need not be repeated here.
The second reason was that the witness' testimony was not proper rebuttal and could have been included in appellant's case-in-chief.
The trial court's having been presented with two reasonable arguments for excluding *1089 the testimony, it exercised its discretion in so doing, and as a reviewing judge, I do not wish to disturb its ruling in the absence of perceived abuse.
I believe the other error which the majority discusses to have been harmless, and as the majority suggests, would not warrant reversal, standing alone.