597 So.2d 879 (1992)
Sonia YOUNG-CHIN, as Personal Representative of the Estate of David Young-Chin, Deceased, Appellant,
v.
CITY OF HOMESTEAD, Municipality d/b/a James Archer Smith Hospital, Ronald Blum, M.D. and Ronald Blum, M.D., P.A., Appellees.
No. 90-1597.
District Court of Appeal of Florida, Third District.
April 14, 1992.
Rehearing Denied June 2, 1992.
*880 Kurzban, Kurzban & Weinger, Steven M. Weinger, Helena Tetzeli and Laurie Bolch; Mario Martin Lovo, Miami, for appellant.
Wolpe, Leibowitz, Berger & Brotman, Steven Berger, Bradley H. Trushin, Rice & Reiser, and Ramon Reiser, Miami, for appellees.
Before BARKDULL, BASKIN and GERSTEN, JJ.
BASKIN, Judge.
Sonia Young-Chin, individually, and as personal representative of the estate of her deceased husband, David Young-Chin, appeals an adverse final judgment in her action predicated on negligence and medical malpractice by James Archer Smith Hospital, and David's treating physicians: Dr. Ronald Blum, a pulmonary specialist, and Dr. B. Joseph Zumpano, the attending physician.[1] Finding multiple errors in the trial court's evidentiary rulings, we reverse the final judgment.
David Young-Chin was injured in an automobile accident and hospitalized at James Archer Smith Hospital [Hospital]. At trial, evidence disclosed that during his hospitalization, David suffered aspiration pneumonitis  an infection of the lungs resulting from liquid feeding material flowing into, and remaining in, the lungs. The complaint asserted that David was placed in a head-down, or Trendelenberg, position while the feeding pump was operating, aggravating the aspiration pneumonitis. The pneumonitis caused an extremely high fever. David's physicians noted that antibiotic therapy was required; however, David was not started on antibiotics until several days later. David's condition deteriorated. His physicians ordered that he be placed in the Intensive Care Unit, but the hospital allegedly did not have an empty ICU bed. David died shortly thereafter. Defendants maintained that David's cause of death was an untreatable sepsis infection brought on by his injuries arising from the automobile accident, and that David would have died regardless of the care he received.
First, appellant Young-Chin argues that the trial court erred in refusing to allow her to cross-examine Dr. Robert Rogers, defendant Blum's pulmonary medicine expert, concerning the propriety of placing a comatose patient in the Trendelenberg position without discontinuing forced nasogastric feeding.
Dr. Rogers testified extensively during direct examination regarding the use and indications of the Trendelenberg position. *881 He emphatically and repeatedly stated that, contrary to Young-Chin's assertion, it was not possible for a patient to aspirate in that position. During cross-examination, however, when Young-Chin's counsel questioned Dr. Rogers as to the probability of a patient regurgitating and aspirating while in the Trendelenberg position, the trial court sustained defendants' objections to the question and refused to allow Young-Chin to question Dr. Rogers on the effect of the Trendelenberg position on David's aspiration symptoms.
Defendant Hospital argues that the trial court did not abuse its discretion in sustaining the objection and asserts that, in any event, the witness answered the question. We disagree with the Hospital's construction of the record. The transcript clearly reveals that Dr. Rogers did not answer any questions probing his opinion concerning the possibility of a patient aspirating while in the Trendelenberg position.
Although the trial court has discretion in controlling the extent of cross-examination, "cross-examination may go into any phase, and may not be restricted to mere parts ... or to specific facts developed by the direct examination." Dempsey v. Shell Oil Co., 589 So.2d 373, 378 (Fla. 4th DCA 1991). "[C]ross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief... ." Dempsey, 589 So.2d at 378 (emphasis in original) (citations omitted). In Dempsey, the court reversed a judgment for defendants because the trial court committed errors in ruling on the admissibility of evidence during trial. Dempsey presented a scenario for appellate review very similar to the circumstances of this case.
Whether David experienced aspiration while in the Trendelenberg position was an issue critical to the determination of the cause of his death. Dr. Roger testified forcefully that David could not have aspirated while in that position; however, evidence disclosed that David exhibited symptoms suggesting he may have aspirated, and that his physician suspected as much. In restricting Young-Chin's cross-examination of Dr. Rogers on this critical and highly disputed issue, the trial court deprived her of the opportunity to explore the basis for the doctor's opinion, and to demonstrate to the jury that his opinion may have been incomplete or inaccurate. Cf. Mathis v. O'Reilly, 400 So.2d 795 (Fla. 5th DCA 1981) (error to prohibit questioning on the facts and rationale leading to an expert's opinion), review denied, 412 So.2d 468 (Fla. 1982). Such evidence could have reasonably affected the jury's verdict. Dempsey, 589 So.2d at 379. Accordingly, we hold that the trial court abused its discretion in prohibiting that line of inquiry during cross-examination and that the error was not harmless.
Next, Young-Chin contends that the trial court erred in its management of Dr. Gerald B. Kirkpatrick's testimony. Young-Chin asserts that the trial court erred: (1) in permitting the testimony of Dr. Kirkpatrick, the defendant's expert neuropathologist, as to the condition of David's brain tissue in the absence of physical evidence from which to formulate his opinion; and (2) in limiting her cross-examination of Dr. Kirkpatrick as to the grounds for his conclusions. First, we address the limitation of cross-examination.
During direct examination, Dr. Kirkpatrick testified that David had little chance of surviving his brain injuries. He based his opinion on his view that a microscopic examination of David's brain tissue would have exhibited tearing; however, no microscopic examination of David's brain was performed. The only test available to Dr. Kirkpatrick was a scan of David's brain. By Dr. Kirkpatrick's own admission the scan revealed no evidence of tears.
On cross-examination, Young-Chin attempted to question Dr. Kirkpatrick's opinion concerning notations contained in David's medical charts and the nonexistence of microscopic brain slides. Defendant objected to the questioning as exceeding the scope of direct examination. The objection was sustained. We again conclude that the trial court abused its discretion *882 in restricting Young-Chin's attempts to elicit testimony directed to the completeness and the accuracy of the witness's opinion. Dempsey.
Furthermore, the court should not have permitted Dr. Kirkpatrick to testify on this issue in the absence of any physical evidence on which to base his opinion. "It has always been the rule that an expert opinion is inadmissible where it is apparent that the opinion is based on insufficient data." Husky Indus., Inc. v. Black, 434 So.2d 988, 992 (Fla. 4th DCA 1983); Martin v. Story, 97 So.2d 343 (Fla.2d DCA 1957) (opinion based on incomplete information is not admissible). Section 90.705 Florida Statutes (1989), states that if a "party establishes prima facie evidence that the expert does not have a sufficient basis for his opinion, the opinions and inferences of the expert are inadmissible unless the party offering the testimony establishes the underlying facts or data." The trial court allowed Dr. Kirkpatrick to furnish a prognosis for David from an inference of what David's microscopic brain tissue slides might reveal, even though no slides existed from which Dr. Kirkpatrick could have formulated an opinion. The facts underlying Dr. Kirkpatrick's opinion were not established. Thus, Dr. Kirkpatrick's testimony was inadmissible.
Although an expert is permitted to rely on data on which other experts in the field rely, but which has not been admitted into evidence, § 90.704, Fla. Stat. (1989), contrary to defendants' assertions, Dr. Kirkpatrick did not rely on test results or studies. The doctor based his opinion on suppositions, not facts, unlike Robinson v. Hunter, 506 So.2d 1106 (Fla. 4th DCA), review denied, 518 So.2d 1277 (Fla. 1987), where a medical expert testified on the basis of a thermogram test report that was not admitted into evidence, but which did exist. Accord Executive Car & Truck Leasing, Inc. v. DeSerio, 468 So.2d 1027 (Fla. 4th DCA), review denied, 480 So.2d 1293 (Fla. 1985) (psychologist permitted to testify about plaintiff's mental condition based on tests which had been performed on plaintiff). The "opinion of an expert witness cannot be used to form the basis for a conclusion in the absence of evidence." Kelly v. Kinsey, 362 So.2d 402, 404 (Fla. 1st DCA 1978). Dr. Kirkpatrick's opinion as to David's prognosis was premised on his opinion as to what microscopic slides of David's brain tissue would reveal. His conclusions were not based on physical evidence. Kelly, 362 So.2d at 404.
We do not agree that the error was harmless. An opinion derived from facts not in evidence, permitted the expert to express "unstated and perhaps unwarranted factual assumptions concerning the event... ." Nat Harrison Assoc., Inc v. Byrd, 256 So.2d 50, 53 (Fla. 4th DCA 1971). Dr. Kirkpatrick's testimony was improperly admitted and highly prejudicial; its admission was a clear abuse of discretion and mandates reversal.
Finally, Young-Chin asserts that the trial court committed reversible error in restricting her ability to question her neurology expert, Dr. David Ross, to rebut the testimony of defendants' experts. The cumulative effect of defense expert testimony was that David's life expectancy was curtailed by his head injuries, rather than by the hospital and the physicians' treatment. Young-Chin sought to introduce the testimony of Dr. Ross to rebut testimony regarding David's expected recovery from his brain injuries, and the effect of defendants' medical care. Young-Chin's efforts to contradict defendants' theory and to show that the brain injury was not the cause of death, were thwarted.
This issue was addressed in Heberling v. Fleisher, 563 So.2d 1086 (Fla. 4th DCA), review dismissed, 570 So.2d 1305 (Fla. 1990), a medical malpractice case which concluded with a jury verdict and judgment in defendants' favor. The Heberling court reversed the judgment and remanded for a new trial holding that plaintiff was improperly precluded from presenting rebuttal evidence to counter the defense theory. In Heberling, as in the case before us, the trial court's severe limitation of rebuttal constituted an abuse of discretion.
Although a trial court has broad discretion in admitting or excluding evidence, *883 Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Dale v. Ford Motor Co., 409 So.2d 232 (Fla. 1st DCA 1982), limiting rebuttal which goes to the heart of the principal defense and which is not cumulative of evidence presented in plaintiff's case in chief is an abuse of discretion. Heberling. Defendant's reliance on Rhodes v. Asplundh Tree Expert Co., 528 So.2d 459 (Fla.3d DCA 1988), is misplaced. In Rhodes, plaintiff was precluded from presenting rebuttal evidence bolstering his theory of the case. The Rhodes court correctly concluded that this evidence should have been submitted during the plaintiff's case in chief. Young-Chin, however, presents different circumstances. Young-Chin did not offer rebuttal to bolster her case in chief, but sought to rebut or discredit defendants' theory of the case. To prevent Young-Chin's rebuttal witness from testifying, in view of the cumulative impact on the jury of defendants' evidence, constituted an abuse of discretion which unjustly prejudiced plaintiff's case.
In view of the evidentiary errors, which we cannot conclude are harmless or not prejudicial to Young-Chin's case, we reverse the final judgment and remand the cause for a new trial. Our determination makes it unnecessary for us to reach the remaining issues on appeal.
Reversed and remanded for a new trial.
NOTES
[1] Dr. Zumpano subsequently filed bankruptcy proceedings and is not a party to this appeal.