LEVY, Judge.
Appellants/Plaintiffs, Claire J. and Phillip Sidran, appeal from a Final Judgment of no liability in favor of the Appellees/De-fendants, and from the trial court’s denial of their Motion for New Trial. We reverse.
In 1973, Mr. and Mrs. Sidran converted Mrs. Sidran’s orchid-raising hobby into a business. Between 1980 and 1985, they converted the business into a partnership, and formed a corporation in 1992. The business consisted of a small nursery located behind the Sidrans’ home in the Suni-land neighborhood of Miami-Dade County, Florida. By 1990, the Sidrans had five or six greenhouses on .their property, and thousands of orchids in their inventory. In order to properly grow and cultivate their orchids, the Sidrans applied certain fungicides to the plants.
In the early 1980s, Mrs. Sidran applied Benlate WP, a product manufactured by Appellant/Defendant E.I. DuPont De Nemours & Go. (DuPont), to her plants. When she ordered Benlate WP in the late 1980’s, she received Benlate 50 DF (“Ben-late DF”), the chemical at issue in the instant case. The Sidrans’ supplier advised the Sidrans that Benlate DF was the new form of Benlate that was being produced by DuPont. The Sidrans spray records indicated that they used Benlate DF from 1988 through February 1991. After discontinuing their use of Benlate DF in February 1991, the Sidrans switched to a fungicide called Kocide.
According to Mrs. Sidran’s testimony at trial, she noticed a change in her plants in 1989. The plants did not appear to be healthy, they were no longer growing, and there was chlorosis of the leaves. In early 1989, she sent several plants to the Florida Department of Agriculture and Consumer Services for testing. The reports issued by the Department of Agriculture and Consumer Services in May 1989 inquired whether chemical application processes were ruled out as the cause.
In May 1991, the Sidrans received a letter from DuPont which stated that Ben-late 50 DF had been recalled. In June 1991, DuPont set up a claims settlement process. After attempts to settle the Si-drans’ claim proved to be unsuccessful, the Sidrans initiated this litigation. This case was originally tried from March 15,1995 to May 1, 1995, and the jury returned a verdict in favor of the Sidrans. However, eight days after the jury verdict, the trial court granted the Defendants’ motion for a new trial. The retrial, which is the subject of this appeal, began on May 21, 2001.
At the retrial, the Defendants denied that Benlate DF was defective and denied that the product was the cause of the Sidrans’ lost inventory. They presented two possible alternative causes-that the Si-drans’ well water was contaminated with powerful organic solvents that were present in the septic tanks of dry cleaners located upstream from their wells; and that the Sidrans misused Kocide before reporting the widespread damage symptoms.
*1042 The testimony at trial revealed that the residents of the Suniland area used underground wells for their water. The Sidrans watered their orchids from 1987 through January 1992 with the ground water from their wells. In 1991, state and local authorities became aware of contamination .in the ground water in the Suniland area. Further testing showed that there were various levels of contamination in the Suni-land residents’ ground water wells. At the Sidrans’ home, testing for contaminants yielded negative tests for the presence of contamination on September 20, 1991, November 25, 1991, and January 29, 1992; and a positive test for the presence of contamination on November 5, 1991. The level of contamination discovered on November 5, 1991 was 1.7 micrograms per liter. Tests performed on the water of Ethyl Knapp, the Sidrans’ neighbor, returned positive on October 28, 1991 and negative on February 5,1992.
According to . Walter Livingstone of the Miami-Dade County Health Department, the contaminant level at the Sidrans’ home was high enough that he would not continuously drink water from the Sidrans’ wells. Significantly, however, Livingstone testified that the purpose of the contamination investigation was for the benefit of the public health and not the health of plants, and that he had no knowledge of the effect of the contaminants on orchids. Harvey Kottke, a chemical engineer and Chief of Water and Wastewater Treatment for the Department of Environmental Resources Management (DERM), testified that the testing of the ground water showed contamination originating from dry cleaners, that were located upstream from the Suni-land home wells. Mr.' Kottke testified that the levels of contamination found in the wells changed on a daily basis, depending on the ebb and flow of the ground water. Kottke also testified that the Sidrans’ contamination limit was considered safe for drinking purposes. Ricardo Fraxedas, an environmental engineer who worked for DERM during the Suniland contamination, testified that there were pulsations of contamination occurring in the Suniland area between 1989 and 1991. Fraxedas further testified that different properties in the area had varying test results on different days, and that the Sidrans’ property was located in the middle of the plume of contamination. Like Livingstone, Fraxedas did not give an opinion as to whether the water was toxic to plants or humans. The Defendants also presented the videotaped testimony of Ethyl Knapp, who testified that she did not use Benlate DF but experienced similar problems with her orchids as the problems experienced by the Si-drans. Finally, Dr. Harold Coble testified that damage to orchid plants was more likely to occur in response to repeated applications of water contaminated with organic solvents than in response to Ben-late DF as the level of exposure increases. Dr. Coble also testified that he never did any testing himself on the effect on plants of the dry cleaning contaminants dissolved in water.
At the conclusion of the evidence, the Plaintiffs moved to strike the defense of water contamination and moved for a directed verdict as to that issue. The trial court ruled that whether or not the contamination in the ground water was a cause of the Sidrans’ orchid damage was a fact issue. The jury returned a verdict in favor of the Defendants. This appeal follows.
The admission of evidence is a matter within the sound discretion of the trial court. See Jimenez v. Gulf & Western Manufacturing Co., 458 So.2d 58, 59 (Fla. 3d DCA 1984). The trial court’s decision in that regard must be viewed in the context of the trial as a whole. See id. *1043 Relevant evidence is evidence which tends to prove or disprove a material fact. See § 90.401, Fla. Stat. (2001).
That brings us to the testimony of Dr. Coble, the Defendants’ expert witness. The Sidrans contend that the testimony of Dr. Coble, that “the higher the level the contaminant, the more likely damage would occur”, had no basis in fact or law and did not relate to the facts of the instant case. We agree. In order to admit expert testimony, the trial court should determine that the expert testimony will assist the trier of fact “in understanding the evidence or in determining a fact in issue.” § 90.702, Fla. Stat. (1999). Moreover, an expert opinion is inadmissible when it is apparent that the opinion is based on insufficient data. See Young-Chin v. City of Homestead, 597 So.2d 879, 882 (Fla. 3d DCA 1992). In the instant case, Dr. Coble’s testimony was not even based upon insufficient data — it was based upon no data at all. The testimony at trial established the Sidrans’ water contamination level at 1.7 micrograms per liter. Dr. Coble, who testified that the higher level of contaminant, the more likely that damage would occur, performed no experiment and could cite to no study wherein the dry cleaning contaminant could be harmful to the orchids at 1.7 micrograms per liter. In the absence of such a predicate, admission of the water contamination testimony, while probative to some degree, was substantially outweighed by the potential of misleading the jury.[1]
Accordingly, we conclude that the trial court abused its discretion in admitting the evidence regarding well water contamination absent any proper scientific predicate or evidence that it related, in fact, to the damages that the appellants claim was done to their orchids. This cause is reversed and remanded for a new trial.
Reversed and remanded.

. It can also be said that the question posed to Dr. Coble concerning the effect of the contaminants improperly insinuated the existence of facts to the jury; to wit, that contaminants at the level of 1.7 micrograms per liter would have an adverse effect on orchids or that Coble performed a study to test this fact. See Del Monte Banana Co. v. Chacon, 466 So.2d 1167, 1172-73 (Fla. 3d DCA 1985).