CRENSHAW, Judge.
Days after undergoing heart valve surgery, sixty-one-year-old Ann Olesky died at Naples Community Hospital. Her husband, Edward Olesky, as personal representative of Mrs. Olesky’s estate (the Estate), brought a wrongful death action against defendants Dennis J. Stapleton, M.D., Gulf Coast Cardiothoracic Surgeons, and Joseph R. Deify, P.A. based on medical malpractice.[1] The first trial concluded by mistrial because of a hung jury. Then after a three-week retrial, the jury returned a verdict finding the defendants not liable. In these consolidated appeals, the Estate now appeals the final judgment and the accompanying cost judgment entered in favor of the defendants. Because the trial court erred by precluding one of the Estate’s principal experts from testifying to a relevant matter, we reverse the judg *594 ment and remand for a new trial. And because the final judgment is reversed, we reverse the cost judgment.

BACKGROUND

In 2004, Dr. Dennis Stapleton performed a double-valve replacement on Mrs. Olesky. Although immediately after the surgery Mrs. Olesky did well in her recovery, her condition then began to deteriorate and she passed away.
Mrs. Olesky’s husband, Edward, the personal representative of the Estate, brought a medical malpractice wrongful death suit on a failure-to-diagnose theory against the defendants. The trial, like many medical malpractice cases, became a “battle of the experts.” The Estate maintained that Mrs. Olesky died from a treatable cardiac tamponade and aortic dissection. The defendants countered that Mrs. Olesky died from a spontaneous, simultaneous, bilateral coronary artery dissection which could not have been previously detected.
Of primary importance here is the testimony of one of the Estate’s expert witnesses in the case, Dr. Mehta, an expert on aortic dissections and their causes.[2] Defense counsel objected to Dr. Mehta’s testimony that had an echocardiogram been performed, it would have shown a cardiac tamponade. The trial court sustained the objection based on Young-Chin v. City of Homestead, 597 So.2d 879 (Fla. 3d DCA 1992). We write to explain why this ruling by the trial court was reversible error.

DISCUSSION

Standard of Review

While we generally review the trial court’s rulings on the admissibility of evidence for an abuse of discretion, a “ ‘court’s discretion is limited by the evidence code and applicable case law. A court’s erroneous interpretation of these authorities is subject to de novo review.’ ” Sottilaro v. Figueroa, 86 So.3d 505, 507 (Fla. 2d DCA), review denied, 103 So.3d 139 (Fla.2012) (quoting Pantoja v. State, 59 So.3d 1092, 1095 (Fla.2011)); Chavez v. State, 25 So.3d 49, 51 (Fla. 1st DCA 2009). Here the trial court’s application of Young-Chin, 597 So.2d at 879, is an interpretation of the law we review de novo, and, in so doing, we conclude the trial court misinterpreted “applicable case law.” Sottilaro, 86 So.3d at 507.

Analysis

We determine that the court erred in applying Young-Chin to this case by reading it too broadly and by applying it to inapposite facts. In Young-Chin, the Third District reversed a final judgment in favor of a hospital and physicians in a medical malpractice case in which Young-Chin “was placed in a head-down ... position while the feeding pump was operating, aggravating the aspiration pneumonitis.” Id. at 880. In that case, the trial court, among other errors, allowed the defense’s expert, Dr. Kirkpatrick, to testify as to the condition of Young-Chin’s brain tissue, but the district court concluded that Dr. Kirkpatrick had testified without a factual predicate. Id. at 882. As such, Young-Chin stands in part for the proposition that expert witnesses must base their opinions on facts even if those facts are not introduced into evidence. Id. It does not mean that when a test was not performed *595 an expert cannot testify as to what the test would be expected to reveal. Young-Chin was not a failure-to-diagnose case and merely indicates that an expert cannot testify when there are no facts supporting the expert opinion: it does not state that experts can only testify to what is factually supported. Id.
In this failure-to-diagnose case, the trial court erred in failing to admit Dr. Mehta’s opinion that an echocardiogram would have shown a cardiac tamponade if one had been performed. The crux of a failure-to-diagnose case is nonfeasance in the determination of the cause of one’s illness when medical personnel should have been able to do so if certain diagnostic tools, including examinations, had been used. See § 766.102(4), Fla. Stat. (2011). To require testimony based only on tests actually performed would eviscerate the evidence necessary in such cases. By the legislature’s directive, failure to diagnose is a viable type of medical malpractice: we are not free to disregard that directive or to construe case law in a way that disregards that directive. See id. In this case, Dr. Mehta testified that he had reviewed the medical records in the case which established the factual predicate for his expert opinion. Thus, this case is distinguishable from Young-Chin, and we conclude that Dr. Mehta’s testimony should have been allowed.
The failure to allow expert testimony, even when cumulative, is often reversible error in medical malpractice cases. See Cenatus v. Naples Cmty. Hosp., Inc., 689 So.2d 302, 304 (Fla. 2d DCA 1997) (“Even if expert testimony is cumulative, excluding such testimony is harmful because ‘[a] medical malpractice case is always necessarily a battle of expert witnesses.’ ” (quoting Lake v. Clark, 533 So.2d 797, 799 (Fla. 5th DCA 1988))). Accordingly, the final judgment and cost judgment are reversed and the cause remanded for a new trial.
Reversed.
ALTENBERND and WALLACE, JJ„ Concur.

. Another defendant, Dr. Silverstein, and the Estate settled between the trial and retrial, and Dr. Silverstein is not part of this appeal.

. Because he was unavailable for the retrial, Dr. Mehta’s testimony from the first trial was read to the jury by an actor. We note that during closing argument defense counsel commented on facts not in evidence and impugned a witness by referring to the actor standing in for a witness as “lying.” However, because we reverse on other grounds, we do not further discuss this issue.