EVANDER, J.
Appellant, Paul Woodson, appeals from a final judgment entered, pursuant to a jury verdict, in favor of medical malpractice defendants Dr. Darlene Go, Dr. Louis Scala, and Florida Cardiology, P.A. (Ap-pellees). We affirm. In doing so, we recede from Lake v. Clark, 583 So.2d 797 (Fla. 5th DCA 1988), to the extent it holds that with only very broad limits, all qualified expert opinion testimony in a medical malpractice case is to be permitted, even if it is cumulative to other evidence.
The underlying lawsuit stems from an occlusion of Appellant’s femoral artery following a cardiac catheterization performed by Dr. Scala; a complication that necessitated three additional surgeries. Appellant argued that the occlusion was caused by the negligent placement of an Angio-Seal device that resulted in an immediately detectable blockage. Additionally, it was Appellant’s position that Appellees were negligent in not detecting this occlusion prior to his discharge from the hospital. Specifically, Appellant maintained that a physician should have personally examined him prior to his discharge rather than relying upon nurses’ notes and observations.
By contrast, Appellees contended that the occlusion was caused by a dissection of the lining of the artery — a known potential complication that would result in a slowly-developing occlusion. Appellees further contended that there was no evidence of the occlusion prior to Appellant’s discharge and that it is standard practice for cardiologists to followup with patients only when the nurses alert them to potential complications.
On appeal, Appellant raises three issues, only one of which merits discussion. Appellant argues that the trial court improperly limited the presentation of expert testimony to one expert for standard of care and one expert for causation.
As a general rule, the limitation of expert witnesses is a matter of discretion for the trial court. See Lion Plumbing Supply, Inc. v. Suarez, 844 So.2d 768, 770 (Fla. 3d DCA 2003) (“A limitation on the number of experts per side is allowed as a mechanism to prevent the ‘needless presentation of cumulative evidence’.... The application of a restriction of this kind must take into account the circumstances of the case, and the ruling is reviewable for abuse of discretion.”); Elder v. Farulla, 768 So.2d 1152, 1155 (Fla. 2d DCA 2000) (“We recognize that the trial court *233 has broad discretion to determine the number of witnesses to be called by either party.”). However, Appellant maintains that because of the unique nature of medical malpractice cases, it is almost always improper to limit expert witness testimony based on cumulativeness. In support of this argument, he relies heavily on the following language from Lake:
The fact [that the proffered expert witness testimony] was corroborative of other testimony, or even cumulative to it, does not matter. A medical malpractice case is always necessarily a battle of expert witnesses. Within only very broad limits all qualified opinion testimony should be allowed; that is, not disallowed because it is cumulative to other evidence.
533 So.2d at 799. In Lake, we determined that the trial court erred in excluding a doctor’s expert witness testimony on whether the defendants had breached their standard of care. Id. at 800. However, the opinion does not set forth the number of other experts, if any, that had also testified on this issue. Furthermore, given our conclusion in Lake that the excluded testimony was “critical to the plaintiffs’ case,” it is difficult to determine whether or not the above-quoted language the Appellant relies upon was dicta.
Appellant observes that Lake has been cited with approval in Olesky ex rel. Estate of Olesky v. Stapleton, 123 So.3d 592, 595 (Fla. 2d DCA 2013), Moyer v. Reynolds, 780 So.2d 205, 209 (Fla. 5th DCA 2001), and Cenatus v. Naples Community Hospital, Inc., 689 So.2d 302, 304 (Fla. 2d DCA 1997). However, in each of these cases, the appellate court’s determination that certain expert testimony should have been allowed was not based on a holding that all qualified expert testimony should be permitted, even if it is cumulative. See Olesky, 123 So.3d at 595 (holding that trial court should not have prevented expert from testifying as to his opinion that had echocardiogram been performed, it would have shown cardiac tamponade; “[t]o require testimony based only on tests actually performed would eviscerate the evidence necessary in [failure-to-diagnose] cases).” Moyer, 780 So.2d at 209 (“Our review of the record reveals that the testimony was not cumulative.”); Cenatus, 689 So.2d at 304 (“Although Cenatus offered other expert testimony, it is clear from the record that Dr. Weintzen was intended to be the primary expert on behalf of the plaintiff.”).
Regardless, we see no reason to permit litigants in medical malpractice cases to have an almost unfettered right to present cumulative expert witness testimony. We would observe that section 90.612(l)(b), Florida Statutes (2013), expressly requires a trial judge to exercise reasonable control over the presentation of the evidence so as to avoid the needless consumption of time, and section 90.403, Florida Statutes (2013), provides that relevant evidence is inadmissible if its probative value is substantially outweighed by a needless presentation of cumulative evidence. Furthermore, Florida Rule of Civil Procedure 1.200(b)(4) specifically provides that at a pretrial conference, a trial court may consider and determine a limitation on the number of expert witnesses. Notably, neither statute nor the aforementioned rule carves out an exception for medical malpractice cases. See also Smith v. Coastal Emergency Servs., Inc., 538 So.2d 946, 949 (Fla. 4th DCA 1989) (“The statement in Lake ... is in some measure contrary to numerous authorities regarding cumulative testimony_”).
For the reasons set forth above, we decline Appellant’s invitation to simply reverse this cause for a new trial based on the trial court’s purported failure to follow Lake, but rather review the trial court’s *234 decision under an abuse of discretion standard.
In the instant case, Appellant intended to call Dr. Markis and Dr. Schapira as expert witnesses. Both doctors specialize in interventional cardiology. Approximately eleven months before trial, Appel-lees filed a motion to strike Appellant’s “cumulative expert testimony.” It appears that this motion was never heard by the trial court. Six months prior to the trial, Appellees filed a motion in limine “to preclude Appellant from calling both Dr. Markis and Dr. Schapira.” However, sthe trial court did not address this motion until the morning of trial. Appellant argued that although his experts’ testimony would be cumulative in some respects, it would be inappropriate for the court to limit him to one cardiology expert. The trial judge reserved ruling on the motion, but advised counsel that he did not intend to permit cumulative testimony.
Dr. Markis testified prior to Dr. Schapi-ra. He had reviewed the angiogram that was performed during the latter part of Appellant’s heart catheterization procedure but prior to the placement of the Angio-Seal device and, in his opinion, the angiogram did not reveal any evidence of a dissection. When Appellant’s counsel attempted to elicit the doctor’s opinion as to whether the placement or misplacement of the Angio-Seal device caused the blockage, defense counsel objected. The trial court cautioned Appellant’s counsel that if the witness answered the question, he would not permit him to question another expert on that issue because it would be cumulative. As a result, Appellant’s counsel withdrew the question.
However, on at least two separate occasions later in the trial, Dr. Markis was able to render an opinion regarding the placement of the Angio-Seal device. First, in response to a juror’s question on “the significance of whether a dissection was evident in the video images of the dye injection in the femoral artery area,” Dr. Markis opined that there was no evidence that a dissection caused the occlusion, rather the cause “totally resides in the Angio-Seal.” Second, over objection, the trial court permitted Dr. Markis to testify as a rebuttal witness. During his rebuttal testimony, Dr. Markis again opined that the Angio-Seal device caused Appellant’s occlusion.
Appellant argues that although some of Dr. Markis’ initially-excluded testimony was later admitted, he was still prejudiced because the testimony was presented in a “disjointed” manner. Additionally, Appellant contends that the trial court’s decision also precluded him from having Dr. Mark-is give “standard of care” testimony regarding Appellees’ failure to examine Appellant prior to his discharge. However, the record reflects that Dr. Markis testified that in his twenty-five years of performing catheterizations, he always followed up with patients after the procedure and that Dr. Scala erred “after the procedure” by not performing “routine things that are done in the post-treatment period.” Given that Dr. Schapira gave extensive testimony criticizing Appellees for not examining Appellant prior to discharge and opining that the standard of care required a physician- to examine Appellant prior to discharge, any further testimony by Dr. Markis on this point would have been cumulative.
We conclude that under the facts of this case, the trial court’s determination that each party be limited to one expert on the standard of care and one expert on causation did not constitute an abuse of discretion. See Lion Plumbing Supply, Inc., 844 So.2d at 770 (holding that trial court may limit number of experts per side so as to prevent presentation of cumulative testimony). Our greater concern is the failure of the trial court to notify the par *235 ties of its decision to impose restrictions on expert testimony at an earlier time. Litigants are entitled to fair notice of restrictions on expert witness testimony so that they may prepare their case accordingly. Id. at 770-71.
Here, however, the trial court’s failure to give the parties adequate notice of its limitations on expert testimony proved to be harmless error. As previously discussed, the primary issue in this case was the cause of the occlusion in Appellant’s femoral artery. Ultimately, Appellant was able to have both Dr. Markis and Dr. Schapira opine that Appellant’s occlusion was caused by a misplacement of an Angio-Seal device. Additionally, one of Appellant’s treating physicians, Dr. Johnson, also testified before the jury that in his opinion, the misplacement of the An-gio-Seal device caused the occlusion. By contrast, Appellees only had two expert witnesses testify that the occlusion resulted from the dissection of the lining of the artery, Dr. Go and a retained expert.[1] Because Appellant has failed to demonstrate that he was prejudiced by the trial court’s actions, we affirm.
AFFIRMED.
TORPY, CJ., SAWAYA, PALMER, ORFINGER, LAWSON, COHEN, BERGER, LAMBERT and EDWARDS, JJ., concur.
WALLIS, J., recuses.

. The experts' opinions were impacted by whether or not they accepted Appellant’s version of the events occurring post-surgery but prior to discharge. Appellant's experts gave credence to Appellant’s testimony that he had complained of severe pain during this time period. On the other hand, Appellees’ experts relied upon the nurses' notes and observations that Appellant did not voice any complaints of pain and that he exhibited no symptoms suggesting the existence of an occlusion. Thus, the strength of each side's expert testimony was, to a large degree, dependent on whether the jury believed Appellant’s claims that he complained of pain prior to his discharge from the hospital.