FARMER, J.
The trial judge granted a new trial after a jury verdict in favor of plaintiffs in a case against an insurance carrier for uninsured motorist damages. The basis for the new trial was the improper admission of expert testimony that the trial judge concluded afterwards was prejudicial because it was duplicative and because he thought he had been misled by plaintiffs’ trial counsel in allowing it. We conclude that the record does not support the decision, that the testimony of: the two doctors was legally not prejudicial, and that there was no basis in law to have excluded the testimony. We therefore reverse the new trial.
The new trial order in this case arose from a legal determination of prejudice to a party from allowing a particular witness to testify. The question raised is whether testimony by a second orthopedic surgeon *12 was cumulative of testimony of a prior orthopedic surgeon. Plaintiffs argue that if the testimony of the second surgeon was not legally duplicative of the first surgeon’s testimony and, thus, could not have been excluded as cumulative, it is clear legal error to set aside a verdict duly and regularly returned by a jury and award a new trial on the basis of the admission of it. In short, if the trial judge could not have excluded the evidence outright as duplicative during the presentation of evidence, then the judge could not use the admission of the evidence as a basis to grant a new trial afterwards on the grounds that it was duplicative.
Michele Delgardo’s vehicle was struck by an uninsured motorist, after which she and her husband sued their uninsured motorist insurance carrier. The trial court granted a summary judgment on the issue of liability and tried only the issues of permanency of injuries, necessity for medical treatment, and reasonableness of medical expenses.
Following her discharge from the emergency room Michele was seen by her family doctor, an orthopedic surgeon, a neurologist, a chiropractor, and finally another orthopedic surgeon. Her family doctor referred her to the first orthopedic surgeon. The first orthopedic surgeon treated her for four months, then released her and referred her to the neurologist. She saw the neurologist three times in nearly two months. She then began treatment with the chiropractor, which lasted for several months. As a result of an MRI at the instance of the chiropractor approximately one year after the accident, she sought a new evaluation by the second orthopedic surgeon. She also returned later to the neurologist.
Owing to scheduling problems at trial, these medical witnesses were not called in the order in which they saw Michele. The chiropractor and the neurologist testified initially. At that point, plaintiffs sought to present the videotaped testimony of the second orthopedic surgeon. Defendant objected, saying as follows:
“the current problem is that the chiropractor has testified regarding neck and back problems, complaints, and gave a disability. We are expecting to hear from [the first orthopedic surgeon] tomorrow who is an orthopedic surgeon. The plaintiff intends to call him to give a disability as to neck and back complaints. [The second surgeon] is [the first surgeon’s] partner who performed a second opinion for her. He’s an orthopedic surgeon. He’s going to give a disability rating. The basis for our. motion is duplicitous [sic] testimony. If your honor allows the [the second- surgeon] to give a disability to this jury, I will obviously move to strike [the first surgeon]. Basically [we are] asking for a ruling that they get one orthopedic surgeon. We are only going to present one orthopedic surgeon. And to present otherwise on top of the chiropractor, on top of the neurologist is completely duplicitous [sic][1] and usually one expert per specialty.” [emphasis supplied.]
At that point, the trial judge asked plaintiffs’ counsel whether the second orthopedic surgeon was a treating doctor. That attorney responded:
“He is a treating. And, in fact, your honor, he saw Michele after she was diagnosed with a herniated disc by [the chiropractor] and made his conclusions that — impressions that — based upon the MRI that ivas taken, tohich [the first orthopedic surgeon] did not have the advantage of.” [emphasis supplied.]
The trial judge then allowed the videotaped testimony of the second orthopedic surgeon to be presented to the jury.
*13 Initially the second surgeon testified that he was not a partner of the first surgeon, that they were merely associated with one another and several other doctors in the same office. When asked why he saw Michele, the second surgeon testified that:
“She had been treated by another physician, who actually happened to be in this office, and she had come in as a second opinion as a just — basically, it’s a consultation for another opinion as to if there’s — for an evaluation of her state at that point in time and to see if there’s anything that further can be done for her care and treatment.”
He testified that he performed a physical examination of Michele, studied a recent MRI taken at the request of the chiropractor and its accompanying report, conducted certain tests, and reviewed the office notes of the first orthopedic surgeon. He agreed with the first surgeon that she had a herniated disc as well as cervical and lumbar sprains. But he also concluded that, despite the recent MRI, surgery would not benefit Michele. Instead he recommended anti-inflammatory medication, certain physical exercises, and follow-up treatment by the chiropractor and the neurologist. He further testified that, owing to the recent MRI findings, he would give her a greater impairment than the first surgeon had given.
At the end of this testimony by the second surgeon, the trial judge spontaneously castigated plaintiffs’ trial counsel for misrepresenting the role of the second surgeon, and also accused counsel of misrepresenting whether he was a partner of the first surgeon. Yet it is clear from the transcript that it was actually defense counsel — and not plaintiffs’ counsel — who had earlier represented incorrectly that the second surgeon was the partner of the first surgeon. It is equally clear from their testimony that the only connection between the two orthopedic surgeons was that they are associated to work together in the same office.
At that point, defense counsel renewed his earlier motion to limit plaintiffs to the testimony of a single orthopedic surgeon. The trial court expressed open dissatisfaction with plaintiffs’ counsel but announced his intention to allow him to call the first surgeon when trial resumed the next morning.
Before the first surgeon’s testimony actually began on the next morning, however, defense counsel again moved to prevent him from testifying about Michele’s prognosis and future care, or whether the accident had caused her medical condition. After some discussion, the lawyers stipulated that plaintiffs’ counsel would limit the first surgeon’s testimony but that plaintiffs could question him on direct about his disability rating, because the rating given by the second surgeon was based in part on the findings of the first orthopedic surgeon. In fact, defense counsel stated an express agreement that the witness could be questioned as to his opinions about any permanent injury, and then thanked the court. The first surgeon then proceeded with his testimony which was limited as just explained.
The jury found that Michele had sustained a permanent injury and fixed her damages at $204,269. But her husband was awarded no damages for the loss of consortium claim. Allstate moved for a remittitur or a new trial, based in part upon prejudice alleged to have resulted from allowing both orthopedic surgeons to testify, that the second surgeon had actually testified as a cumulative, second opinion, rather than as a treating physician.[2]
In his written order granting the new trial, the trial judge stated:
*14 “Based on the totality of the circumstances, the Court would not have allowed [the second surgeon] to testify by videotape or in person if it had known that [he] was not a treating physician and that he was associated with the treating physician [the first surgeon], all contrary to the representations that were made by plaintiffs’ counsel. The cumulative and repetitive testimony on the issues of permanency and future damages prejudiced the defendant in its right to a fair trial. Under a totality of circumstances analysis, the Court finds and concludes that the erroneous admission of expert testimony unduly prejudiced the defendant and was harmful error that influenced the merits of this cause.”
It is this order that we review today.
With all due regard to this able and experienced trial judge, the record does not support the basis for his decision. We recognize that grants of new trials are among the areas where trial judges have the broadest discretion. See e.g. Baptist Memorial Hospital Inc. v. Bell, 384 So.2d 145 (Fla. 1980); Nicaise v. Gagnon, 597 So.2d 305 (Fla. 4th DCA), rev. denied, 604 So.2d 487 (Fla. 1992). But like all discretionary matters, this one is not without limits. See Wackenhut Corp. v. Canty, 359 So.2d 430, 435 (Fla. 1978) (“Although an order for new trial need not incant language to the effect that the verdict is against the manifest weight of the evidence or was influenced by considerations outside the record, the order must give reasons which will support one of these two conclusions so that it will be susceptible of appellate review.” [emphasis supplied.] ); Moss v. Appel, 718 So.2d 199, 201 (Fla. 4th DCA 1998) (“When a trial court grants a new trial on a legal issue, the standard of review is not the same as it is when the ground is manifest weight of the evidence. ‘The closer an issue comes to being purely legal in nature, the less discretion a trial court enjoys in ruling on a new trial motion.’” [emphasis supplied.] [c.o.]). Thus the exercise of the discretion for new trials must take place within the range of the discretion itself — that is, it must rest on the foundation on which the law allows new trials to be granted. The record in this case fails to show that the new trial order we review today was so founded.
Where there has been no pretrial order limiting the number of expert witnesses, the right of a party to call disclosed witnesses on issues to be decided by the jury presumptively constricts the trial judge’s discretionary power to limit the number of witnesses. Unless it can be shown that the testimony of a proposed witness will unnecessarily duplicate the subject matter of another witness’s testimony, the judge should ordinarily allow the party to call the witness. See LoBue v. Travelers Insurance Co., 388 So.2d 1349 (Fla. 4th DCA 1980) (right to present evidence and call witnesses is important due process right of litigant; exclusion of testimony of witness is drastic remedy that should be invoked only under most compelling circumstances); and Fogel v. Mirmelli 413 So.2d 1204 (Fla. 3d DCA 1982).
It is important to emphasize that in this case the identities of both orthopedic surgeons were disclosed during pretrial discovery and were therefore known by both parties. Equally notable is the fact that both surgeons were expressly named on the pretrial witness lists of both parties. Also there was no pretrial order limiting the parties to a single expert witness of a given medical specialty. Moreover, at the stage in the trial when the videotaped testimony of the second surgeon was sought to be adduced, the testimony of the first surgeon had not yet been presented to the jury. It could not then have been apparent that the testimony of the second surgeon would duplicate the testimony of the first surgeon when the first surgeon was later called to the stand.
The record demonstrates beyond any doubt in our mind that the testimony *15 of the second surgeon did not duplicate the testimony of the first. And, correspondingly, neither did the testimony of the first surgeon duplicate the testimony of the second surgeon. When the first surgeon saw and treated Michele, he did not have any MRI results of the kind generated by the chiropractor. It was only after Michele received the report of the MRI results taken at the instance of the chiropractor— which was nearly one year after the accident and months after the first surgeon had released her — that she returned to the office for an orthopedic evaluation and diagnosis in light of the MRI results showing a herniation in one disc and a bulge at another. Upon her return to the office, she saw the second surgeon who practiced in the same office.
There are two things emerging from the testimony of the second surgeon about this issue that are striking. First, as we have already indicated, when asked whether he practiced as a sole practitioner or in a partnership, the second surgeon answered: “We have an association [emphasis supplied.] of physicians, of 13 physicians that work together.” His testimony is thus at odds with the trial court’s mistaken impression that he was a partner of the first surgeon. In any event, it is difficult for us to understand why the form of business relationship between the two surgeons — partnership or association — is of any consequence to whether the testimony of the one duplicated or copied the other. To prove a nonduplicative medical diagnosis and an evaluation not intended solely for trial purposes, a party may surely adduce the testimony of two different doctors who happen to be partners.
The second important thing about the testimony relevant to the new trial order is that the second surgeon testified that he did an examination of Michele, reviewed her existing chart showing the course of her care with the first surgeon, revieived the MRI recently taken by the chiropractor, and then gave her a new diagnosis. Specifically she wanted to know if surgery or other orthopedic services were warranted in light of the MRI findings. That was not something that duplicated the first surgeon’s diagnosis because he had never seen the MRI or its report and never had occasion to consider its effect on whether his patient should now consider surgery. Moreover, when the second surgeon saw Michele, it was approximately one year after the accident and several months after the first surgeon had discharged her. Obviously the passage of time could have led to changes in her condition that might have required new or different medical treatment that was not a duplicate of her previous care.
To a great extent the reaction of the trial judge to these events grows out of an old perception among the personal injury cognoscenti among the trial bench and bar as to the meaning of the terms treating and examining doctor. At one time these terms were relevant to whether a doctor could give an opinion as to the plaintiffs injuries. In Marshall v. Papineau, 132 So.2d 786 (Fla. 1st DCA 1961), for example, the court held that an examining doctor could not give opinions but that a treating doctor could safely do so. The rationale of the court was as follows:
“The danger of admitting such testimony is apparent. When a doctor is consulted for the purpose of treatment, it may safely be assumed that the patient will tell the truth to the doctor since he is interested primarily in being cured. However, when he goes to a doctor for the purpose of qualifying the latter to testify, the natural tendency and inducement would be to the contrary.’ ”
132 So.2d at 787 [c.o.]. But the cases also held that an examining doctor could give an opinion if he made an independent examination of the patient and the patient’s records. Marine Exploration Co. v. McCoy, 308 So.2d 43 (Fla. 3d DCA 1975). And even then, as the court held in Steiger v. Massachusetts Cas. Ins. Co., 253 So.2d 882 (Fla. 3d DCA 1971), the essential inquiry was whether the consultation and *16 examination were undertaken for the sole purpose of qualifying the doctor to testify as a medical expert witness in the plaintiffs case. With the adoption of the evidence code, however, this old distinction is now largely meaningless. See § 90.808(4), Fla. Stat. (1997).
The real issue facing the trial court was whether a witness will offer testimony that unnecessarily duplicates the testimony of another witness, in which case the trial judge has discretion to limit or exclude it. When the purpose of the court is to learn whether the trial testimony of a second medical expert witness will unnecessarily duplicate that of another witness so that the trial judge may appropriately exercise the power to limit redundant witnesses, the inquiry should be pointed and precise. This is essential because a party has the right to present all relevant, nonduplica-tive evidence. If a trial judge is concerned whether two orthopedic surgeons will give cumulative opinions based on the same facts, then that should be the inquiry. While two proposed witnesses of the same medical specialty might indicate the possibility of cumulative evidence, the real question is whether they will testify to cumulative opinions based on the same facts. Clearly a party is not necessarily guilty of calling duplicative witnesses simply because she calls two witnesses of the same medical specialty. The testimony of the second surgeon in this case establishes rather clearly that his evidence was based in part on the same facts and evidence as the first’s but also in part on new facts and evidence. Therefore as a matter of law it was not cumulative.
Also, when plaintiffs were ultimately able to present the testimony of the first surgeon, they limited their questions to areas that did not duplicate the earlier testimony of the second surgeon. This careful limiting of the first surgeon’s testimony resulted because, when defense counsel renewed his objection, both counsel took a moment to reach an accommodation. Indeed, the trial judge approved their agreement, saying: “All right. Based on that agreement, then I’ll ratify, confirm what you just stated.” Therefore with the court’s approval and the stipulation of defense counsel, plaintiffs excluded from the first surgeon’s testimony any reference to future impairment and future medical treatment. They confined their examination to only that treatment given by that first surgeon.
To be sure, we are unable to find in the record any evidence of a misrepresentation by plaintiffs’ trial counsel. In context, the trial judge’s question as to whether the second surgeon was a treating doctor has been clearly shown to have been reasonably understood by the lawyer to inquire whether the second surgeon was consulted by the patient for a new diagnosis and possible resulting treatment based on subsequent indications, rather than as an additional expert opinion based on the same medical record as the previous surgeon. Clearly there is nothing in the record showing that she consulted the second surgeon simply for the purposes of testifying as an additional orthopedic expert and that he was therefore, in fact and law, a cumulative expert.
In the end, notwithstanding the extremely broad discretion of trial judges to order new trials on grounds that the verdict is against the manifest weight of the evidence or was influenced by nonrecord considerations, we conclude that in this instance the trial judge was mistaken as a matter of law as to the role of the two witnesses and the effect of representations made by plaintiffs’ counsel. The record simply does not support the decision of the trial judge in granting a new trial.
Accordingly we reverse the order granting a new trial and, finding no merit in any other contention, remand for the entry of judgment on the jury verdict.
POLEN and TAYLOR, JJ., concur.

. Lawyers should be very careful about using the word duplicitous to convey the meaning of iteration or duplication. The meaning of duplicitous is "marked by deliberate deceptiveness." American Heritage Dictionary of the English Language (3rd ed.) 571. The correct adjective is "duplicative.”

. There were other grounds not pertinent to the present discussion because they were rejected as not being relied on by the trial court's written decision granting the new trial. We reject defendant’s contentions on cross appeal and conclude that none of them would support our granting a new trial on this record.