# Supreme Court of Florida

_____

No. SC15-1924
_____

**MONICA A. GUTIERREZ, etc., et al.,**
Petitioners,

vs.

**JOSE LUIS VARGAS, M.D., etc., et al.,**
Respondents.

[March 22, 2018]

LABARGA, C.J.

Petitioner Monica A. Gutierrez ("Monica"), together with her parents Javier and Monica E. Gutierrez (collectively "Petitioners"), seeks review of the decision of the Third District Court of Appeal in *Vargas v. Gutierrez*, 176 So. 3d 315 (Fla. 3d DCA 2015), on the ground that it expressly and directly conflicts with decisions of other district courts of appeal on a question of law. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const. For the reasons explained herein, we hold the trial court did not abuse its discretion when it allowed Monica's treating physicians to testify during trial as to their diagnostic opinions and permitted Petitioners to present rebuttal testimony from a second pathology expert. We further hold that

any prejudice attributable to comments made during Petitioners' closing argument was insufficient to warrant a new trial. We therefore quash the decision of the Third District with respect to those issues.[1]

## BACKGROUND

This case arises out of a medical malpractice action brought by Petitioners against Respondent, Jose Luis Vargas, M.D. (Dr. Vargas).[2] Dr. Vargas served as Monica's pediatrician from shortly after her birth in August 2000 until she was six years old. Petitioners claimed that, during that time, Dr. Vargas negligently failed to diagnose Monica with a chronic kidney disease known as C1q nephropathy, which severely damaged Monica's kidneys and forced her to undergo a kidney transplant in May 2007.[3] Dr. Vargas contended Monica suffered not from C1q nephropathy but from membranoproliferative glomerulonephritis (MPGN),[4] an acute kidney disease which could not have been diagnosed sooner. The parties

---

1. Respondent Dr. Vargas asks this Court to quash the Third District's decision insofar as it affirmed the trial court's denial of his motion for directed verdict. We decline to address this issue.

2. The business entity under which Dr. Vargas operated his practice is also a party to this case.

3. In addition to Monica's personal damages and medical expenses, Monica's parents brought a separate loss of consortium claim.

4. This condition is also referred to as rapidly progressing glomerulonephritis (RPGN).

relied heavily on expert testimony concerning pathology, pediatrics, and kidney disease to support their cases. During pretrial proceedings, the trial court entered a uniform order providing "[e]ach party is limited to one (1) retained expert per specialty. No other expert testimony shall be permitted at trial." The case went to trial in August 2012, and a mistrial was declared after three days. After a second, fourteen-day trial in April 2013, a jury awarded Petitioners $3,831,476 in damages. Petitioners then moved for additur, which Dr. Vargas accepted, and the trial court entered a final judgment award of $4,101,476. Dr. Vargas moved for a new trial on the issue of liability only, and the trial court denied the motion.

Dr. Vargas appealed to the Third District Court of Appeal, asserting that the trial court erred by denying his motion for directed verdict because Petitioners' evidence was insufficient to prove he proximately caused Monica's injury. *Vargas*, 176 So. 3d at 321-22. Dr. Vargas also contended he was entitled to a new trial on liability because the trial court had erroneously allowed Petitioners to present testimony from multiple expert witnesses in the same area of specialty in violation of a pretrial order, and because Petitioners' counsel made improper comments during closing arguments. *Id.* at 322, 326. The Third District affirmed the trial court's denial of Dr. Vargas's motion for directed verdict, but reversed and remanded for a new trial "based on the plaintiffs' violation of the 'one expert per

- 3 -

specialty' rule and for materially misrepresenting evidence in closing arguments."
*Id.* at 318.

Petitioners sought review from this Court, arguing that the Third District's decision conflicts with *Cantore v. West Boca Medical Center, Inc.*, 174 So. 3d 1114 (Fla. 4th DCA 2015),[5] and other cases, because it improperly limits the testimony of treating physicians and rebuttal experts. In *Cantore*, the Fourth District held in part "that the jury should hear from a plaintiff's treating physicians—as in more than one, when there are more than one involved—regarding their care, recommendations, and medical decision-making." *Id.* at 1119 (citing *Ryder Truck Rental, Inc. v. Perez*, 715 So. 2d 289, 290 (Fla. 3d DCA 1998)). Petitioners also argue that the Third District erred in holding that Petitioners' closing arguments "mischaracterized the evidence, were highly improper, and materially prejudiced Dr. Vargas." *Vargas*, 176 So. 3d at 327.

This review follows. A trial court's decision not to grant a new trial is reviewed for abuse of discretion. *Brown v. Estate of Stuckey*, 749 So. 2d 490, 497-98 (Fla. 1999). The issue of whether a district court's decision on appeal "was contrary to the standards set forth by this Court . . . presents a pure question of law, and our review is de novo." *Van v. Schmidt*, 122 So. 3d 243, 252 (Fla. 2013).

---

5. That case is currently pending before this Court. *Cantore v. W. Boca Med. Ctr., Inc.*, No. SC15-1926 (Fla. reply brief filed Mar. 23, 2017).

- 4 -

## THE "ONE EXPERT PER SPECIALTY" ORDER

The Third District held the trial court abused its discretion by denying Dr. Vargas's motion for a new trial after it allowed Petitioners to call "not one, but four separate pathologists at trial to testify regarding the timing and diagnosis of [Monica's] disease." *Vargas,* 176 So. 3d at 320 (emphasis removed). As the district court notes, the trial court had limited each party to one retained expert per specialty by pretrial order. *Id.*

During trial, Petitioners offered the deposition testimony of Dr. Victor Pardo, a pathologist who examined a biopsy of Monica's kidneys before the transplant. Petitioners also presented Dr. Philip Ruiz, a pathologist who examined Monica's native kidneys after they were removed. Petitioners also presented two expert witnesses to testify with respect to the pathology of Monica's condition: Dr. Arthur Cohen testified during Petitioners' case-in-chief and Dr. Byron Croker testified as Petitioners' rebuttal expert.[6] Each of these four pathologists testified that Monica suffered from C1q nephropathy and gave an opinion as to the timing of the disease's progression. The Third District held the trial court abused its discretion by failing to enforce its pretrial order, and granted a new trial "because the plaintiffs were able to call four expert pathologists . . . and each pathologist

_____

6. Petitioners were allowed to present Dr. Croker because, at that point in the trial, Dr. Cohen was unavailable to testify.

- 5 -

was permitted to give his opinion on the nature and duration of Monica's illness, which unfairly prejudiced Dr. Vargas, who was limited to only one pathology expert on that subject." *Id.* at 322.

A trial court's enforcement of its own pretrial order is reviewed for abuse of discretion, and reversal is appropriate only when the affected party can clearly show the abuse resulted in unfair prejudice. *Binger v. King Pest Control*, 401 So. 2d 1310, 1313 (Fla. 1981). We hold that admitting the testimony of Dr. Pardo and Dr. Ruiz did not violate the pretrial order because they testified as Monica's treating physicians, not as expert witnesses. We further hold the trial court did not abuse its discretion by allowing Dr. Croker to testify in rebuttal.

### Treating Physicians

Testimony given by treating physicians blurs the boundary between fact testimony and expert testimony because treating physicians and expert medical witnesses both possess "scientific, technical, or other specialized knowledge" which informs their testimony. § 90.702, Fla. Stat. (2017). Because of this specialized knowledge, an expert is permitted to render an otherwise-impermissible opinion about the evidence where such an opinion is helpful to the jury. § 90.703, Fla. Stat. (2017) (expert witness may give opinion or inference on ultimate issue); *see also Estate of Murray v. Delta Health Group, Inc.*, 30 So. 3d 576, 578 (Fla. 2d DCA 2010) (expert may testify to ultimate issue, but may not

"render an opinion that applies a legal standard to a set of facts"). Experts assist the jury by testifying "regard[ing] a technical matter of which the jury [does] not have basic knowledge." *State Farm Mut. Auto. Ins. Co. v. Bowling*, 81 So. 3d 538, 540 (Fla. 2d DCA 2012). Conversely, we have held that expert testimony should be excluded when the facts testified to "were within the ordinary experience of the jurors and did not require any expertise beyond the common knowledge of the jurors" to form a reasoned judgment of the facts. *Johnson v. State*, 393 So. 2d 1069, 1072 (Fla. 1980).

While an expert witness assists the jury to understand the facts, a treating physician testifies as a fact witness "concerning his or her own medical performance on a particular occasion and is not opining about the medical performance of another." *Fittipaldi USA, Inc. v. Castroneves*, 905 So. 2d 182, 186 (Fla. 3d DCA 2005). This necessarily involves testifying with regard to the exercise of the treating physician's specialized medical knowledge as applied to other facts of the case, namely the plaintiff's symptoms. A treating physician is a fact witness, and testifies to past facts based on personal knowledge. Those facts involve a technical matter about which the jury lacks basic knowledge, *see Bowling*, 81 So. 3d at 540-41, but they are facts nonetheless. The treating physician's perception of the plaintiff's symptoms, their diagnostic opinion, and their recommendation of a particular treatment are all facts in issue. An expert

witness testifies with the benefit of hindsight, whereas a treating physician does not. *See Ryder Truck Rental, Inc. v. Perez*, 715 So. 2d 289, 290-91 (Fla. 3d DCA 1998) ("Treating physicians do not acquire their 'expert knowledge for the purpose of litigation but rather simply in the course of attempting to make [their] patient well.' ") (alteration in original) (quoting *Frantz v. Golebiewski*, 407 So. 2d 283, 285 (Fla. 3d DCA 1981))).

Treating physicians are limited to their medical opinions as they existed at the time they were treating the plaintiff, while an expert may form new opinions in order to help the trier of fact decide the case. *See Tetrault v. Fairchild*, 799 So. 2d 226, 227-28 (Fla. 5th DCA 2001) (ordering a new trial where treating physician gave opinion testimony based on MRIs he had not seen during treatment). Although a treating physician may possess the same qualifications as an expert witness, treating physicians form medical opinions in the course of rendering treatment and may therefore testify to the fact that they formed those opinions, and explain why they did so, provided such testimony is otherwise admissible. *See Ryder*, 715 So. 2d at 290-91. For example, Dr. Vargas is also a pediatrician and has specialized technical knowledge beyond the ordinary experience of a lay juror. Neither party contends, however, that the "one expert per specialty" rule prevents Dr. Vargas from testifying as to the facts of how and why he diagnosed Monica or recommended a particular course of treatment, despite the involvement of his

medical opinion in such testimony. Similarly, it was permissible for Dr. Pardo and Dr. Ruiz to testify in their capacities as Monica's treating physicians in order to allow the jury to determine the ultimate issue presented by the case in light of all the relevant facts.

A witness's ability to testify as a treating physician is predicated on the witness's having provided the plaintiff with the medical treatment which is the subject of the witness's testimony. In its decision below, the Third District held that Dr. Pardo should be considered an expert witness rather than a treating physician because he "never saw or administered care to Monica or spoke directly to Dr. Paredes." *Vargas*, 176 So. 3d at 319.[7] Similarly, the Third District also held Dr. Ruiz should not be considered a treating physician because "[s]imilar to Dr. Pardo, Dr. Ruiz did not ever see or administer care or treatment to Monica, did not communicate with Dr. Paredes, and did not offer an opinion as to the cause, identity, or duration of Monica's kidney disease." *Id.* The Third District further explained that Dr. Pardo and Dr. Ruiz testified during trial to findings they had not made during Monica's treatment, and "the first time the doctors had rendered these opinions was during their testimony at trial." *Id.* at 325.

---

7. Dr. Ana Paredes was the pediatrician who admitted Monica to Miami Children's Hospital in October 2006 and oversaw her clinical treatment.

As the term suggests, a physician becomes a "treating physician" when the physician participates in treatment: that is, when the physician applies medical knowledge and judgment to render care or assist with care. The concept of "treatment" in modern medicine is very broad. Patients with complex or long-term medical problems may be treated by teams composed of several physicians, each with a different specialty, all of whom play an essential role in the patient's care. Pathologists are such specialists. A pathologist studies "all aspects of disease, but with special reference to the essential nature, causes, and development of abnormal conditions, as well as the structural and functional changes that result from the disease processes." *Stedman's Medical Dictionary* 1442 (28th ed. 2006) (defining "pathology"). Even though a pathologist may never see the patient in person, they may still be liable for medical malpractice committed against that patient. *See Hickman v. Emp'rs' Fire Ins. Co.*, 311 So. 2d 778, 779 (Fla. 4th DCA 1975) (malpractice case against pathologist who, examining patient's gallbladder, "negligently failed to notice the attached bile duct" which a surgeon had negligently removed along with the gallbladder); *see also Variety Children's Hosp. v. Osle*, 292 So. 2d 382 (Fla. 3d DCA 1974) (malpractice case against pathologist who negligently commingled tissue samples, resulting in injury).

Dr. Pardo and Dr. Ruiz may never have stood at Monica's hospital bedside, but they assisted with Monica's care by investigating the pathology of her

condition and diagnosing the disease based on those investigations. Furthermore, although the Third District correctly states that Dr. Ruiz "examined Monica's kidney only *after* Dr. Paredes had already determined that Monica's kidneys could not be saved and after Monica's kidneys were removed," 176 So. 3d at 325, Dr. Ruiz performed his examination for the purpose of identifying and diagnosing the disease from which Monica suffered, in order to ensure she continued to receive the proper treatment and that the disease which caused her native kidneys to fail would not harm her transplanted kidney. The timing of his examination in no way alters the purpose for which it was done. Had Dr. Ruiz negligently failed to diagnose a disease process which later harmed Monica's transplanted kidney, he himself could have been liable for providing deficient medical care. *See Hickman*, 311 So. 2d at 779 (pathologist negligently examined gallbladder which had already been removed from patient); *see also Osle*, 292 So. 2d at 383 (pathologist negligently mixed samples of cysts after cysts were surgically removed from patient). Therefore, Dr. Pardo and Dr. Ruiz were among Monica's treating physicians, and their testimony as to the facts of their treatment of Monica did not violate the trial court's limitation on expert witness testimony.

Not all medical opinions formed by a treating physician are automatically admissible, however. "It is entirely possible that even a treating physician's testimony could cross the line into expert testimony." *Fittipaldi USA*, 905 So. 2d

- 11 -

at 186 n.1; *see also Lion Plumbing Supply, Inc. v. Suarez*, 844 So. 2d 768, 771 (Fla. 3d DCA 2003) (noting there is no "black letter rule whereby the testimony offered by a treating practitioner is never considered for purposes of a one-expert-per-side limitation"). If a treating physician testified to a medical opinion formed for the purpose of litigation rather than treatment, then the mere fact that the physician once treated the plaintiff would not prevent that doctor from being considered an expert witness. *See Fairchild*, 799 So. 2d at 228 (treating physician was expert witness because he "was called by the plaintiff not to testify to his 'care and treatment' of plaintiff but to render an opinion as a neuroradiologist based upon his review of MRIs supplied to him in plaintiff's counsel's office"). Again, the determination turns on the role played by the witness: if the treating physician gives a medical opinion formed during the course and scope of treatment in fulfillment of their obligation as a physician, then the physician is a fact witness, albeit a highly qualified one. If, however, the treating physician gives an opinion formed based on later review of medical records for the purpose of assisting a jury to evaluate the facts in controversy, the physician acts as an expert witness, and should be considered as such. *See Suarez*, 844 So. 2d at 771 (holding it is improper for a treating physician to "serve[] as a conduit to place specialist testimony before the jury, or offer[] medical opinions based on specialist reports" when testifying as a lay witness rather than an expert).

Although Dr. Vargas argues, and the Third District assumed, that Dr. Pardo and Dr. Ruiz formed their diagnostic opinions in preparation for trial rather than for purposes of treatment, the record does not support this conclusion. Dr. Pardo testified that his pathology study of Monica's kidneys showed "proliferative glomerulonephritis with C1q deposits." He also testified as to his estimate of how long Monica's condition had taken to develop, and made clear that he formed this conclusion as part of his pathology study. The questions asked during his deposition were limited to the pathology study of Monica's kidney tissue that he himself had conducted, and were not based on later review of other records.[8] Dr. Ruiz's testimony was also limited to his own pathology study of Monica's tissue.[9] Dr. Pardo and Dr. Ruiz testified to the facts of their participation in Monica's treatment, which necessarily included their diagnostic reasoning and

---

8. Although Dr. Pardo testified that he had reviewed his report and slides in preparation for giving testimony, this does not change our analysis: four years had passed between the time of Dr. Pardo's study and the taking of his deposition. Dr. Pardo testified that he performs "around 350" pathology studies each year. He did not give testimony that involved review of any materials other than those involved in his original study of Monica.

9. During trial, Petitioners' counsel sought several times to elicit comment from Dr. Ruiz with respect to Dr. Pardo's pathology report, despite the fact that Dr. Ruiz had not reviewed that report in the course of treating Monica. Dr. Vargas objected each time, and the court sustained each objection on the ground that a treating physician could not comment on reports he did not review during treatment.

- 13 -

conclusions.  Therefore, Dr. Pardo and Dr. Ruiz were fact witnesses rather than additional expert witnesses.

**Cumulativeness**

Although treating physicians do not necessarily fall within the scope of a "one expert per specialty" limitation, their testimony may nevertheless be excluded if it is cumulative.  As the Fifth District Court of Appeal has explained, the Florida Evidence Code

> expressly requires a trial judge to exercise reasonable control over the presentation of the evidence so as to avoid the needless consumption of time, and . . . relevant evidence is inadmissible if its probative value is substantially outweighed by a needless presentation of cumulative evidence.  Furthermore, Florida Rule of Civil Procedure 1.200(b)(4) specifically provides that at a pretrial conference, a trial court may consider and determine a limitation on the number of expert witnesses.

*Woodson v. Go*, 166 So. 3d 231, 233 (Fla. 5th DCA 2015).  There is no exception for medical malpractice cases.  *Id.*  As the rule suggests, cumulativeness alone is not sufficient grounds to exclude evidence: the probative value of the evidence must be "*substantially* outweighed" by the danger of "*needless* presentation of cumulative evidence."  § 90.403, Fla. Stat. (2017) (emphasis added); *see also Delgardo v. Allstate Ins. Co.*, 731 So. 2d 11, 16 (Fla. 4th DCA 1999) ("The real issue facing the trial court was whether a witness will offer testimony that *unnecessarily* duplicates the testimony of another witness, in which case the trial court has discretion to limit or exclude it.").  Courts should exercise their discretion

to avoid the needless waste of time through unnecessary presentation of cumulative evidence. *Woodson*, 166 So. 3d at 233.

In *Delgardo*, the Fourth District Court of Appeal determined the testimony of one orthopedic surgeon was not cumulative to the testimony of a second orthopedic surgeon, both of whom had treated the plaintiff. 731 So. 2d at 11-12. The trial court had not entered a pretrial order limiting each side to one expert per specialty. *Id.* at 14. Instead, the district court reviewed a trial court's order granting a new trial on the grounds that the testimony of the two surgeons was cumulative and repetitive. *Id.* In holding that the testimony of the two surgeons was not cumulative, the Fourth District explained:

> While two proposed witnesses of the same medical specialty might indicate the *possibility* of cumulative evidence, the real question is whether they will testify to cumulative opinions based on the same facts. Clearly a party is not necessarily guilty of calling duplicative witnesses simply because she calls two witnesses of the same medical specialty. The testimony of the second surgeon in this case establishes rather clearly that his evidence was based *in part* on the same facts and evidence as the first's but *also in part on new facts and evidence*. Therefore as a matter of law it was not cumulative.

*Id.* at 16. This explanation illustrates the difference between cumulative testimony, which courts have discretion to exclude, and relevant confirmatory testimony, which they do not. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1259 (Fla. 2014) (holding that courts have no discretion to exclude relevant evidence that is otherwise admissible). The two treating surgeons in *Delgardo* both testified to the

- 15 -

same medical conclusion, but did so based on separate facts gleaned from their independent examinations of the plaintiff during the course of treatment. 731 So. 2d at 12-13. Although the testimony of one surgeon tended to confirm the conclusions of the other, neither surgeon engaged in improper bolstering, nor was one's testimony cumulative to the other's. *Id.* at 16.

In the present case, the trial court did not abuse its discretion when it concluded that the testimony of Dr. Pardo and Dr. Ruiz, though confirmatory, did not rise to the level of unnecessary cumulativeness. Each pathologist based his testimony on a separate review of different slides made from biopsy material collected at different times. Although their respective testimony expressed similar conclusions, Dr. Pardo and Dr. Ruiz each testified to their personal observations "based in part on the same facts and evidence . . . but also in part on new facts and evidence." *Delgardo*, 731 So. 2d at 16 (emphasis removed). Therefore, their testimony was not cumulative. Furthermore, for the reasons discussed above, their testimony was not cumulative to the testimony of Petitioners' pathology experts: Dr. Pardo and Dr. Ruiz testified to what they observed and concluded during Monica's treatment. Dr. Cohen and Dr. Croker, in contrast, testified to opinions formed based on the review of not just the evidence available to Monica's treating pathologists, but other evidence in the case as well. Although Petitioners' fact

- 16 -

witnesses and expert witnesses testified to similar conclusions, this does not render their testimony cumulative.

### Petitioners' Rebuttal Witness

The Third District also held the testimony of Dr. Croker, Petitioners' sole rebuttal witness, was improper:

> In rebuttal, rather than recalling Dr. Cohen to address portions of Dr. Craver's testimony he had not addressed, the plaintiffs called a *fourth* expert pathologist witness, Dr. Croker, to testify about three of the slides Dr. Craver[, Dr. Vargas's pathology expert,] had examined.
>
> This rebuttal testimony was largely unnecessary, totally cumulative, and served only to bolster the testimony of the plaintiffs' three prior expert pathologists, as Dr. Cohen had already given his opinion about the nature and timing of the disease.

176 So. 3d at 326. Trial courts have broad discretion to admit rebuttal testimony, and "a trial court abuses that discretion when it limits non-cumulative rebuttal that goes to the heart of the principal defense." *Mendez v. John Caddell Constr. Co.*, 700 So. 2d 439, 440-41 (Fla. 3d DCA 1997).

As we have explained, Dr. Croker was not Petitioners' fourth expert pathology witness: Dr. Pardo and Dr. Ruiz did not testify as experts, but as treating physicians. Dr. Croker's testimony was not cumulative to Dr. Cohen's testimony because Dr. Croker testified exclusively about evidence which Dr. Cohen did not address in his testimony. *See Delgardo*, 731 So. 2d at 16 (testimony is not cumulative if it is based on evidence not discussed by prior testimony).

Specifically, Dr. Croker discussed photographs of pathology slides taken by Dr. Cohen in his review of the case. In his testimony during Petitioners' case-in-chief, Dr. Cohen discussed some—but not all—of the photos he had taken. The defense pathology expert, Dr. Randall Craver, discussed the remaining photographs during Dr. Vargas's case-in-chief. On rebuttal, Dr. Croker discussed only the photographs introduced during Dr. Craver's testimony. This second set of photographs was only introduced in Dr. Vargas's case-in-chief, and Dr. Cohen did not discuss those photographs at all. Therefore, Dr. Croker's testimony was not cumulative to Dr. Cohen's testimony.

Furthermore, Dr. Croker's testimony did not improperly bolster Dr. Cohen's testimony. Improper bolstering occurs when an expert testifies on direct examination that some other authority not subject to cross-examination, such as another expert whom the witness consulted or a secondary treatise, agrees with the testifying expert's opinions. *See Linn v. Fossum*, 946 So. 2d 1032, 1039 (Fla. 2006) ("[A]n expert is not permitted to testify on direct examination that the expert relied on consultations with colleagues or other experts in reaching his or her opinion."). This prohibition applies "the general rule that it is improper on direct examination to introduce evidence to support the credibility of a witness" to the testimony of expert witnesses. *Id.* The reasons for this rule are twofold: first, such testimony "indicates a group consensus based on hearsay that would not be

- 18 -

conveyed by testimony that the expert relied on records, tests, or reports from . . . medical providers directly involved in the diagnosis or treatment of the patient." *Id.* Second, "[t]he opposing party is unable to cross-examine the nontestifying experts who participated in the consultation[,]" and "there is no way for the trial court to assess whether the consulting expert, upon whom the testifying expert relied in whole or in part, is herself qualified or had a proper foundation." *Id.* In other words, "opinion testimony by consensus is essentially immune to challenge" and is therefore inadmissible. *Id.* Here, nothing in Dr. Croker's testimony indicates that he consulted with Dr. Cohen about the truth or accuracy of his conclusions, and none of Dr. Croker's testimony references Dr. Cohen's analysis of the evidence. Dr. Croker gave his own independent opinion and did not bolster the testimony of Dr. Cohen.

Dr. Croker's testimony also was not improper rebuttal. "Rebuttal evidence explains or contradicts material evidence offered by a defendant." *Britton v. State*, 414 So. 2d 638, 639 (Fla. 5th DCA 1982). During its case-in-chief, a plaintiff must establish a prima facie case, but is not required to anticipate possible defenses by affirmatively addressing them in its case-in-chief. *See Heberling v. Fleisher*, 563 So. 2d 1086, 1087 (Fla. 4th DCA 1990) (holding that the plaintiff need not "disprove all anticipated defenses in its main case—that is exactly what rebuttal is supposed to accomplish"). When not cumulative, rebuttal is appropriate to

discredit an opposing party's defense or to challenge the conclusions of an opposing party's expert. *See Griefer v. DiPietro*, 708 So. 2d 666, 672 (Fla. 4th DCA 1998) (holding exclusion of rebuttal expert was improper where expert's "rebuttal testimony would have explained and contradicted material evidence offered by [defendant]").

Here, the intended effect of Dr. Croker's testimony was to discredit Dr. Vargas's expert, Dr. Craver, by showing that even the evidence upon which Dr. Craver relied supported a diagnosis of C1q nephropathy rather than MPGN. "Rebuttal to challenge the calculations of a defense expert is permissible rebuttal evidence." *Id.* at 672 (citing *Zanoletti v. Norle Props. Corp.*, 688 So. 2d 952 (Fla. 3d DCA 1997)). Therefore, Dr. Croker's testimony was permissible rebuttal, and the trial court did not abuse its discretion by admitting it.

Finally, although allowing Dr. Croker to testify did permit Petitioners to call a second expert witness in a particular specialty despite the pretrial order, the trial court did not abuse its discretion in doing so. Compliance with pretrial orders prevents the injustice and waste of resources which result when counsel resorts to trial tactics which seek to ambush opposing parties. *See Binger*, 401 So. 2d at 1314. "Counsel who disobey a trial court order entered months earlier should not be rewarded for their conduct." *Fla. Marine Enters. v. Bailey*, 632 So. 2d 649, 652 (Fla. 4th DCA 1994). The relevant facts of a case "should be the determining

- 20 -

factor rather than gamesmanship, surprise, or superior trial tactics." *Binger*, 401 So. 2d at 1313 (quoting *Dodson v. Persell*, 390 So. 2d 704, 707 (Fla. 1980)). Furthermore, although the enforcement of a pretrial order rests within a trial court's considerable discretion, this discretion "must not be exercised blindly" and should be applied with due consideration of possible prejudice to the parties. *Binger*, 401 So. 2d at 1314. The Florida Rules of Civil Procedure aim "to eliminate surprise, to encourage settlement, and to assist in arriving at the truth." *Id.* at 1313 (quoting *Spencer v. Beverly*, 307 So. 2d 461, 462 (Fla. 4th DCA 1975) (Downey, J., specially concurring)). A trial court enters orders in the expectation they will be obeyed, and the parties in turn rely on the sound discretion of the trial court to ensure an orderly and fair administration of justice.

In the present case, the trial court permitted Dr. Croker to testify because Dr. Cohen was unavailable during rebuttal. The record reflects the parties knew well in advance that Dr. Cohen would be unable to return to testify on rebuttal, and there was no possibility that Dr. Vargas would be unfairly surprised by his testimony. Given Dr. Cohen's unavailability, the trial court did not abuse its discretion by permitting Dr. Croker to testify despite its pretrial order.

Accordingly, we hold the trial court did not abuse its discretion by permitting Dr. Croker, Dr. Pardo, and Dr. Ruiz to testify.

## IMPROPER ARGUMENT

The Third District also determined that Petitioners' counsel had made improper comments during closing argument which misstated the evidence introduced at trial. During closing argument, Petitioners' counsel stated, "[I]f the kidneys could have been saved, this child never would have needed any of this. It [sic] would have needed some steroids, some ace [sic] inhibitors, and that's it. That's what Dr. Kaplan told you."[10] Dr. Vargas objected that this comment was outside the evidence. The trial court overruled the objection, and instructed the jurors to "please recall and rely on [their] own recollection of the evidence." Dr. Kaplan testified during trial that, with proper diagnosis and treatment, Monica's prognosis would have been "significantly better," and that other patients with C1q nephropathy who have received such treatment "have almost universally gone on to do well and remain in remission and not require dialysis or transplant." Dr. Kaplan stated that the sooner a diagnosis was made and treatment was started, the better Monica's prognosis would have been. He also testified that patients who

---

10. Dr. Bernard Kaplan was Petitioners' expert witness in pediatric nephrology.

are correctly diagnosed in the early stages of kidney disease can be successfully treated with "medications" and that some patients "may not need to be treated with medications in stage one."

The Third District concluded that Petitioners' reference in closing argument to steroids and ACE inhibitors rather than "medications" was "particularly prejudicial, and, *when combined with* the cumulative expert testimony, [it] warrant[s] a new trial." 176 So. 3d at 326 (emphasis added). As we have explained previously, the Third District's conclusions regarding "cumulative" expert testimony in this case were erroneous. Therefore, according to the Third District's own analysis, any prejudice arising out of this comment was insufficient by itself to warrant a new trial. We agree. However inadvisable it may have been, the single comment made by Petitioners' counsel did not have the potential to compromise the fairness of the proceeding such that a new trial would be required.

## CONCLUSION

Based upon the foregoing, we hold the trial court did not abuse its discretion by permitting Dr. Pardo and Dr. Ruiz to testify as Monica's treating physicians, nor by permitting Dr. Croker to testify as a rebuttal expert in this case. We also hold that the comment made by Petitioners' counsel during closing argument does not merit a new trial. Accordingly, we quash the decision of the Third District with respect to those issues, approve the Fourth District's decision in *Cantore* to

- 23 -

the extent it held a treating physician may testify regarding their care and treatment of the plaintiff, and remand the present case to the Third District for further proceedings consistent with this decision.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., dissents with an opinion, in which LAWSON, J., concurs.
POLSTON, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

CANADY, J., dissenting.

The Third District's decision in *Vargas v. Gutierrez*, 176 So. 3d 315 (Fla. 3d DCA 2015), does not expressly and directly conflict with the Fourth District's decision in *Cantore v. West Boca Medical Center, Inc.*, 174 So. 3d 1114 (Fla. 4th DCA 2015), on the same question of law. *See* art. V, § 3(b)(3), Fla. Const. Because this Court lacks jurisdiction to review *Vargas*, I dissent.

In *Vargas*, the relevant issue addressed by the Third District was whether four medical professionals (pathologists) called by the plaintiffs at trial were all expert witnesses. *Vargas*, 176 So. 3d at 322-26. This determination was important because of a pretrial order limiting each side to one expert witness per specialty area. *Id.* at 320. *Vargas* examined the different methods for distinguishing medical professionals testifying as expert witnesses from medical professionals testifying as treating physician fact witnesses. *Id.* at 323-25. *Vargas* ultimately

- 24 -

concluded that the four witnesses all gave expert testimony and that the trial court thus abused its discretion by allowing the plaintiffs to violate the pretrial order. *Id.* at 322. The majority here disagrees with *Vargas* and instead concludes that two of the witnesses were treating physicians testifying as fact witnesses and that one of the other witnesses was properly allowed to testify as an expert witness on rebuttal. Majority op. at 13-14, 21. In doing so, the majority recognizes that a treating physician can in fact be an expert witness, depending "on the role played by the witness." Majority op. at 12. Nothing in *Vargas* suggests otherwise.

In *Cantore*, the Fourth District addressed a very specific limitation on the admissibility of "subsequent treating physician" testimony presented by *defendant* physicians in medical malpractice actions. The narrow issue in *Cantore* was whether certain hypothetical deposition testimony was proscribed by *Saunders v. Dickens*, 151 So. 3d 434 (Fla. 2014)—namely, whether a subsequent treating physician impermissibly testified "that adequate care by the defendant physician would not have altered the subsequent care." *Cantore*, 174 So. 3d at 1117 (quoting *Saunders*, 151 So. 3d at 442). *Cantore* ultimately concluded that the testimony at issue was "properly admitted." *Id.* at 1121. In doing so, *Cantore* distinguished the testimony under consideration from that in *Saunders*, noting that, among other things, the testifying physician in *Cantore* specifically testified "that *he would have made different recommendations*" if he had been told that the patient's true

condition was as the plaintiffs suggested.  *Id.* at 1120.  *Cantore* also distinguished the role of the testifying physician there from the role of the testifying physician in *Saunders*.  For example, *Cantore* described the testifying physician as "a neutral third-party witness," unlike the subsequent treating physician in *Saunders* who was a defendant in the case at the time of his deposition.  *Id.* at 1121.  *Cantore* also described the testifying physician as an intimately involved "co-treating" physician rather than a "subsequent" treating physician.  *Id.* at 1119.  And *Cantore* repeatedly referred to the testifying physician as an "expert" witness.  *See id.* at 1115, 1119-20.  In fact, *Cantore* concluded in part that the disputed testimony was admissible because it was proper expert testimony given by an expert witness:

> Objections, based on speculation and improper hypothetical, to the admissibility of Dr. Sandberg's testimony were properly overruled because as a treating physician, neurosurgeon, *and expert* on July 3, 2008, Dr. Sandberg was qualified to answer even questions which assumed certain facts which did not occur, *as experts are allowed to do*.

*Id.* at 1120 (emphasis added).  In short, the only question of law decided by *Cantore* was that *Saunders* did not apply to the testimony presented under the very different factual circumstances in *Cantore*.

*Vargas* and *Cantore* undoubtedly both involve medical malpractice cases and the testimony of certain "treating" physicians, but the decisions in the two cases do not expressly and directly conflict on the same question of law.  *See* art.

V, § 3(b)(3), Fla. Const. Because this Court does not have jurisdiction to review *Vargas*, I dissent.

LAWSON, J., concurs.

POLSTON, J., dissenting.

The Third District Court of Appeal's decision in *Vargas v. Gutierrez*, 176 So. 3d 315 (Fla. 3d DCA 2015), does not expressly and directly conflict with the decisions alleged by the Gutierrezes. Therefore, this Court does not have the constitutional authority to review this case, and I respectfully dissent.

Specifically, the Third District's decision in *Vargas* does not conflict with the Fourth District's decision in *Cantore v. West Boca Medical Center, Inc.*, 174 So. 3d 1114 (Fla. 4th DCA 2015). As the majority recognizes, the Third District's decision in *Vargas* analyzed whether disputed testimony from multiple physicians should be considered treating physician testimony or whether the testimony constituted expert witness testimony that violated the trial court's pretrial ruling that "[e]ach party is limited to one (1) retained expert per specialty." Majority op. at 3. Ultimately, the Third District held that the testimony from the four physicians was expert witness testimony that unfairly prejudiced Dr. Vargas. *Vargas*, 176 So. 3d at 322. In contrast, the Fourth District in *Cantore*, 174 So. 3d at 1119, held that the physician's testimony in that case was not prohibited by this Court's decision in *Saunders v. Dickens*, 151 So. 3d 434, 442 (Fla. 2014), because the specific

- 27 -

physician was not a "subsequent treating physician," which was at issue in *Saunders*, but was instead a "co-treating physician, and thus his role squarely exceeded that of a subsequent treating physician." In other words, *Vargas* analyzed the difference between treating physician testimony and expert physician testimony, whereas *Cantore* analyzed the difference between subsequent treating physician testimony and co-treating physician testimony. Because these are two different legal issues, the two decisions do not conflict.

Accordingly, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Third District - Case Nos. 3D13-1923 and 3D14-0048

(Dade County)

Marvin Kurzban and Jed Kurzban of Kurzban, Kurzban, Weinger, Tetzeli & Pratt, P.A., Miami, Florida; and Bambi G. Blum of Bambi G. Blum, P.A., Miami, Florida,

for Petitioner

Dinah Stein and Erik P. Bartenhagen of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, Florida; and Ilisa W. Hoffman of Ilisa W. Hoffman, P.A., Coral Gables, Florida,

for Respondent