# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D19-3987
_____

JACQUELINE HUGGINS,
individually, and with
ALEXANDER HUGGINS, as Mother
and Father and Next Friends of
A.R.H., a minor child,

     Appellants,

     v.

JEFFREY SIEGEL,

     Appellee.

_____

On appeal from the Circuit Court for Alachua County.
Donna M. Keim, Judge.

September 15, 2021

ON MOTION FOR REHEARING, CLARIFICATION, AND CERTIFICATION

B.L. THOMAS. J.

On consideration of Appellant's motion, this Court grants the motion for clarification, denies the motion for rehearing, withdraws the opinion filed June 3, 2021, and substitutes the following opinion in its place.

Appellants rented a house on Appellee's property from August 2015 through December 2017. Appellants complained about

potential water intrusion and mold before moving into the home, and again in July or August of 2017. When Appellee refused to have the house inspected, Appellants hired their own mold inspection company. The inspection report indicated that multiple mold types, including two toxic molds—aspergillus and penicillium—were present in the home. After receiving the mold report, Appellants vacated the property.

Appellants alleged that Appellee's negligence as a landlord exposed Mrs. Huggins to dangerous mold while she was pregnant with one of Appellants' children. Throughout Mrs. Huggins's pregnancy, ultrasounds showed that the child was forming two kidneys, but when the child was born it had only one kidney, a condition known as renal agenesis. The child also exhibited signs of brain injury. The child's medical conditions caused Mrs. Huggins severe emotional distress.

Appellants retained a medical expert to testify about the issue of causation. Approximately a month before the pretrial conference, Appellee moved to exclude Appellants' expert's testimony. The trial court's pretrial scheduling order advised that all motions were to be heard and filed before the pretrial conference including motions in limine, objections to deposition exhibits, and (*Daubert*) motions.

Following a non-evidentiary hearing, the trial court granted Appellee's motion to exclude the expert testimony. The trial court rejected Appellants' argument that the motion was untimely because it was filed within the time allowed by the pretrial scheduling order. The trial court also found that the expert was not qualified to testify on causation and his testimony was neither reliable nor valid under *Daubert*. Following the trial court's ruling, Appellants did not move for a continuance to acquire a new expert or request another form of relief from the trial court.

Appellee moved for summary judgment on all remaining claims and Appellants conceded that without their expert's testimony they were unable to assert a genuine issue of material fact on the issue of causation. The trial court granted Appellee's motion for final summary judgment.

2

On appeal, Appellants challenge the trial court's decision granting Appellee's *Daubert* motion to exclude the testimony of Appellants' expert medical witness. Appellants challenge the timeliness of Appellee's *Daubert* motion, the proper standard of review for *Daubert* decisions, and whether the trial court properly excluded the expert's testimony.

*Timeliness*

Appellants argue that Appellee's *Daubert* challenge was not timely filed. The focus for determining whether a *Daubert* motion is untimely is on when the party became aware of the opposing party's expert's opinion. *Booker v. Sumter Cnty. Sheriff's Office*, 166 So. 3d 189, 192 (Fla. 1st DCA 2015). However, a trial court's enforcement of its own pretrial order is reviewed for an abuse of discretion "and reversal is appropriate only when the affected party can *clearly* show the abuse resulted in *unfair prejudice*." *Gutierrez v. Vargas*, 239 So. 3d 615, 622 (Fla. 2018) (emphasis added).

Here, Appellee waited approximately 230 days after deposing Appellants' expert to challenge the expert's testimony, but he filed his *Daubert* motion approximately one month prior to the pretrial conference and within the time limitation established by the pretrial scheduling order. Additionally, the trial court held a non-evidentiary hearing addressing Appellee's *Daubert* motion approximately two weeks before the pretrial conference. Finally, following the trial court's ruling excluding the expert testimony, Appellants failed to move for a continuance or request another form of relief from the trial court. As a result, Appellants were unable to "clearly show" that the trial court's decision to follow its pretrial scheduling order unfairly prejudiced Appellants. *See id.*

*Standard of Review*

The standard of review for a trial court's *Daubert* decision is an abuse of discretion. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) ("Our opinion in *Joiner* makes clear that a court of appeals is to apply an abuse-of-discretion standard when it 'reviews[s] a trial court's decision to admit or exclude expert testimony.'" (citations omitted)); *see also Booker*, 166 So. 3d at 194 n. 2); *Baan v. Columbia Cnty.*, 180 So. 3d 1127, 1131 (Fla. 1st DCA

3

2015); *Hedvall v. State*, 283 So. 3d 901, 911 (Fla. 3d DCA 2019); *Bunin v. Matrixx Initiatives, Inc.*, 197 So. 3d 1109, 1110 (Fla. 4th DCA 2016).

Additionally, Appellants' reply brief acknowledged that "to the extent the trial court ruled that [the expert] was unqualified, that decision should be reviewed for an abuse of discretion." This Court's decision only addresses the qualification prong of *Daubert*. Thus, as agreed upon by Appellants, the standard of review is abuse of discretion.

*Application of* Daubert *to Expert Testimony*

"Under *Daubert*, the trial court not only evaluates a putative expert's credentials, but also serves as a gatekeeper in 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Baan*, 180 So. 3d at 1133 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Appellants' expert is a board certified, licensed physician in the specialty of obstetrics and gynecology and the subspecialties of reproductive endocrinology and embryology. However, Appellants retained him as their *causation* expert to testify that the mold in Appellee's rental home caused their child's renal agenesis and brain injury. Despite the expert's extensive medical resume, he was not qualified to testify as to causation because he lacked the experience and knowledge to connect the mold to the child's medical conditions. *See White v. Ring Power Corp.*, 261 So. 3d 689, 696–97 (Fla. 3d DCA 2018) (excluding expert witness testimony where none of the experts had ever interpreted crane-loading data or used such data to investigate the cause of a crane accident or wire rope failure).

Appellants' expert testified that he treated a patient with an unborn child with renal agenesis during his training, but his current practice specializes in infertility, and he does not typically treat patients like Mrs. Huggins. He testified that he has never been involved in cases involving the disappearance of a kidney in an unborn child, or cases where a kidney was observed but later disappeared before birth. Appellants' expert never attempted to link mold to unilateral renal agenesis before this case and he never presented on the topic of mold in the developing kidney. He admitted that he is not a mold expert and knowledge of mold

4

growth is outside his specialty. Additionally, he was unable to find scientific or medical literature directly linking mold to kidney disappearance in humans.

A mold expert testified that he believed within a reasonable degree of scientific probability that mold existed in Appellants' home while the child was in utero, but he was unable to determine the quantity of mold that was present or whether the property would have passed a mold inspection. Thus, even if Appellants' medical expert had relied on the mold expert's report, which he did not,[*] he did not have enough independent knowledge or additional expert information to determine whether the mold was the cause of the child's renal agenesis and brain injury. Because of the medical expert's lack of experience with mold and its ability to cause renal agenesis, he could only speculate on the issue of causation and his opinion was "a classic example of the common fallacy of assuming causality from temporal sequence." *Perez v. Bell S. Telecomms, Inc.*, 138 So. 3d 492, 499 (Fla. 3d DCA 2014). As a result, Appellants' medical expert was not qualified to testify regarding causation, despite the minimal qualifications needed under *Daubert*.

AFFIRMED.

ROWE, C.J., and M.K. THOMAS, J., concur.

———————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————

Jordan S. Redavid of Fischer Redavid PLLC, Hollywood, for Appellants.

---

[*] Appellant testified that he received no information reflecting the condition of the mold in the home during the pregnancy and when asked how he knew there was mold present during the relevant period he stated that he relied on basic knowledge and common sense that "mold doesn't grow overnight."

Rhonda B. Boggess of Marks Gray, P.A., Jacksonville, and Chandra L. Miller of Goodis Thompson & Miller, P.A., St. Petersburg, for Appellee.