# Third District Court of Appeal

## State of Florida

Opinion filed March 20, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-341
Lower Tribunal No. 11-23377

_____

**Philip Morris USA, Inc., et al.,**
Appellants,

vs.

**Kenneth Gloger, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

King & Spalding LLP, and William L. Durham II and Val Leppert (Atlanta, Georgia), for appellant R.J. Reynolds Tobacco Company; Shook, Hardy & Bacon LLP, and Laura K. Whitmore (Tampa); Arnold & Porter Kaye Scholer LLP, and Keri L. Arnold and Geoffrey J. Michael (Washington, DC), for appellant Philip Morris USA Inc.

Crabtree & Auslander, and John G. Crabtree, Charles M. Auslander, Linda A. Wells, Brian C. Tackenberg and Emily Cabrera, for appellee.

Before EMAS, C.J., and SCALES and HENDON, JJ.

SCALES, J.

In this Engle[1] progeny wrongful death action, Phillip Morris USA Inc. and R.J. Reynolds Tobacco Company, the defendants below (collectively, the "tobacco defendants"), appeal a final judgment entered pursuant to a jury verdict in favor of the plaintiff below, Kenneth Gloger, as personal representative of the estate of his wife, Irene Gloger. The tobacco defendants challenge various aspects of the trial conducted below, one of which merits discussion and warrants reversal. Specifically, because we conclude that the trial court abused its discretion in permitting Mr. Gloger to testify, without limitation, that Mrs. Gloger's initial, treating physicians (both oncologists, who did not testify at trial) told the Glogers that Mrs. Gloger had primary lung cancer caused by smoking cigarettes, we reverse the final judgment and remand the case for a new trial.[2]

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

In July 2011, Kenneth Gloger, as personal representative for the estate of his deceased wife, Irene Gloger, filed the instant wrongful death action against the tobacco defendants and others in the Miami-Dade County Circuit Court. The second amended complaint alleged, in relevant part, that: (i) Mrs. Gloger had contracted lung cancer as a result of smoking cigarettes manufactured, advertised, marketed, and sold by the tobacco defendants; (ii) Mrs. Gloger's death, on

---

[1] Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

[2] Given our resolution of this matter, we need not, and do not, reach any of the other issues raised on appeal.

November 22, 1996, was a direct and proximate result of her addiction to smoking the tobacco defendants' cigarettes; and (iii) the Glogers and their children have Engle class member status. The tobacco defendants specifically denied these allegations.

The lower court ordered that trial be conducted in two phases. In phase 1, the jury verdict form asked the jury to decide: (i) whether Mrs. Gloger was addicted to cigarettes containing nicotine, and if so, was such addiction a legal cause of lung cancer and death; (ii) whether smoking cigarettes manufactured by the tobacco defendants was a legal cause of Mrs. Gloger's lung cancer and death; (iii) the percentage of fault between Mrs. Gloger and the tobacco defendants; (iv) whether concealment or omission of material information concerning the health effects or addictive nature of smoking cigarettes sold by the tobacco defendants was a legal cause of Mrs. Gloger's lung cancer and death; and (v) whether the furtherance of the tobacco defendants' agreement with other tobacco companies to conceal or omit material information concerning the health effects or addictive nature of smoking cigarettes was a legal cause of Mrs. Gloger's lung cancer and death. Based on these findings, the jury was asked to award compensatory damages and to determine whether an award of punitive damages was warranted. In phase 2, the jury verdict form asked the jury to determine the amount of punitive damages to award against the tobacco defendants.

Prior to trial, on October 6, 2017, the tobacco defendants filed a motion in limine seeking to exclude, as hearsay, any out-of-court statements made to the Glogers by non-testifying doctors about the origin and progression of Mrs. Gloger's cancer. Specifically, the tobacco defendants sought to preclude Mr. Gloger from testifying that the two oncologists (Drs. Sinkovics and Altemose) who, in 1995 and early 1996, initially treated Mrs. Gloger for her cancer, told the Glogers that Mrs. Gloger had lung cancer caused by smoking cigarettes.

At a subsequent hearing, the trial court ruled on the tobacco defendants' motion in limine, finding that the oncologists' statements to the Glogers were not hearsay because the statements were being offered not for their truth (i.e., whether Mrs. Gloger had lung cancer), but to show the "effect on listener" (i.e., the emotional impact Mrs. Gloger's diagnosis with cancer had on Mr. Gloger). The trial court held that the subject statements were relevant to support Mr. Gloger's damages claims for pain and suffering; specifically, the statements demonstrated "when the damages started to flow."

When defense counsel requested that the trial court give a limiting instruction to the jury that the oncologists' statements be considered only for the "explicit purpose of the effect on the listener to Mr. Gloger for his damages," the trial court initially denied the request, explaining:

> THE COURT: [Mr. Gloger is] going to claim that he's suffering because someone told him his wife is dying of cancer. *And if it was*

4

*lung cancer, fine.* The issue still remains, is it lung cancer. Just because – there's going to be evidence going both ways as to whether her lung cancer was the cause of her death. You'll be able to argue that if the jury – I'm not going to instruct them. But you can certainly argue that. . . . I'm sorry [Mr. Gloger] began to suffer, *but that doctor that told him that was wrong.* You're going to find that he [sic] didn't die of lung cancer and, therefore, his suffering – we feel bad for him, but – Just like every other case, you have to prove that someone wasn't hurt because of what my client did.

(Emphasis added).

At a later hearing, defense counsel again challenged the introduction of the oncologists' statements at trial, suggesting that Mr. Gloger be limited to testifying that Drs. Sinkovics and Altemose told the Glogers that Mrs. Gloger had "cancer, that it was termina[l] cancer, deadly cancer, however the Court finds is fair and appropriate under the circumstances." Citing to section 90.403 of the Florida Statutes, defense counsel argued that limiting Mr. Gloger's testimony in this fashion eliminated the prejudice to the tobacco defendants "under a 403 analysis" without diminishing the impact the cancer diagnosis had on Mr. Gloger when he heard it. Defense counsel emphasized, "[T]hat, to us, is a solution to the problem of letting in back-door testimony about lung cancer from witnesses that are not going to be testifying in the case . . . ." The trial court declined to limit Mr. Gloger's testimony in such fashion, but agreed to give a limiting instruction when Mr. Gloger testified about what the oncologists told him and Mrs. Gloger.

5

Defense counsel then filed a legal memorandum arguing that a limiting instruction would be insufficient, arguing again that "the proper remedy is to substitute the word 'terminal' for the word 'lung' when Mr. Gloger tells the jury about the conversations" with Drs. Sinkovics and Altemose. At trial, the lower court denied the tobacco defendants' request, stating its intention to give a limiting instruction.

When Mr. Gloger's trial testimony turned to the conversations he and Mrs. Gloger had with Drs. Sinkovics and Altemose, the trial court gave the following limiting instruction:

> THE COURT: Ladies and gentlemen of the jury, Mr. Gloger is now going to testify about things that his doctor told . . . his wife and him. And these things involve his wife's diagnosis.
>
> You may consider what Mr. Gloger heard to evaluate the effect that information had on Mr. Gloger. Based on a rule of law relating to hearsay, however, you may not consider what the doctors told Mr. Gloger for the truth of the matter asserted, just the effect the information had on Mr. Gloger.

Mr. Gloger then testified, in relevant part, as follows:

> Q. [by Plaintiff's counsel] Back to Dr. Sinkovics, so he's a cancer doctor?
>
> A. [by Kenneth Gloger] Yes.
>
> Q. And he works at St. Joe's cancer center?
>
> A. Yes.
>
> . . . .

6

Q. And so before you have the treatment, you meet with the cancer doctor, and did this cancer doctor, oncologist, Dr. Sinkovics, tell you what Irene had?

A. He believed that she had lung cancer.

Q. Did he tell you what it was caused by?

A. Said it was probably caused by smoking.

Q. After Dr. Sinkovics treated her for a while and he started some therapy, did there come a time when you transferred to another oncologist, also at the St. Joe's cancer center who took over the care of Irene?

A. Yes, that's correct.

Q. What was his name?

A. His name was Dr. Rand Altemose.

Q. And was Dr. Altemose, likewise, a cancer doctor, oncologist who was responsible for the treatment of your wife?

A. Yes, he was.

Q. And did you talk to Dr. Altemose about the cause of – strike that. Did you talk to Dr. Altemose about his diagnosis for Irene?

A. Yes, we did.

Q. And what did he say?

A. He said it was from smoking, lung cancer.

Q. He said she had lung cancer from smoking?

A. Yes.

7

. . . .

Q. And did there come a point in time where Dr. Altemose referred you on to Dr. Ruckdeschel[3] and the Moffitt Cancer Center?

A. Yes.

. . . .

Q. And did you listen to Dr. Altemose and go to Moffitt Cancer Center?

A. Yes, we did.

. . . .

Q. Did Dr. Ruckdeschel explain to you what he believed the – her diagnosis and its cause?

A. Yes, he said she had lung cancer and he believed it was from smoking.

Q. Obviously, this was tough news for you and your wife to hear?

A. Yes, she was very weak at that point.

Q. I'm talking about even going back to Dr. Sinkovics, I'm sorry. Going back to Dr. Sinkovics, back to 1995, the first time you heard it, the second time you heard it, the third time you heard it, or whenever you heard it.

A. Oh, it was devastating. I – I had no idea. I mean, Irene was, for the most part, very healthy prior to this diagnosis.

The jury returned a verdict in favor of the estate, finding R.J. Reynolds

Tobacco Company fifty percent at fault, Philip Morris USA, Inc. thirty percent at

---

[3] Dr. John Ruckdeschel testified at trial as the estate's expert on causation.

fault, and Mrs. Gloger twenty percent at fault. The jury awarded $7.5 million in compensatory damages ($2.5 million to Mr. Gloger, and $2.5 million each to the Glogers's two children) and finding punitive damages were appropriate. In phase 2 of the trial, the jury awarded $5 million in punitive damages against each of the tobacco defendants ($10 million total). On February 4, 2018, the trial court entered a final judgment pursuant to the jury verdicts. This appeal ensued.

## II. ANALYSIS[4]

1. *The out-of-court statements by Drs. Sinkovics and Altemose were offered to prove the "effect on listener" and, therefore, were not hearsay.*

We begin our analysis by deciding whether, as a matter of law, the subject out-of-court statements by Drs. Sinkovics and Altemose were hearsay in this case.

Under the Florida Evidence Code, "[h]earsay" is defined as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (2018). While hearsay evidence is generally inadmissible at trial, see § 90.802, Fla. Stat. (2018), if the out-of-court statement "is offered for some purpose other than its truth, the statement is not hearsay and is generally admissible if relevant to a material issue in the case." Penalver v. State, 926 So. 2d

---

[4] "The standard of review of a trial court's decision on the admissibility of evidence is generally an abuse of discretion standard. However, the question of whether evidence falls within the statutory definition of hearsay is a matter of law, subject to *de novo* review." Deutsche Bank Nat. Tr. Co. v. Alaqua Prop., 190 So. 3d 662, 664 (Fla. 5th DCA 2016) (quoting Burkey v. State, 922 So. 2d 1033, 1035 (Fla. 4th DCA 2006)).

1118, 1132 (Fla. 2006); <u>see also</u> § 90.401, Fla. Stat. (2018) ("Relevant evidence is evidence tending to prove or disprove a material fact.").

As the surviving spouse in this wrongful death action, Mr. Gloger was entitled to seek recovery for the loss of his wife's "companionship and protection and for mental pain and suffering *from the date of injury*." § 768.21(2), Fla. Stat. (2018) (emphasis added); <u>see also</u> Fla. Std. Jury Instr. (Civ.) 502.2(d). Consistent with section 768.21 and the standard jury instruction, the estate's counsel sought to establish Mr. Gloger's entitlement to damages by introducing the oncologists' out-of-court statements to demonstrate the emotional impact (i.e., the "effect on listener") on Mr. Gloger of hearing, for the first time, that his wife had cancer. Because the subject testimony was not offered to prove the truth of what was told to Mr. Gloger by the non-testifying doctors – i.e., that Mrs. Gloger's cancer originated in her lung – it was not hearsay; and, because such evidence was relevant to a material issue in the case (Mr. Gloger's damages), it was admissible at trial. <u>See, e.g.</u> <u>Pitts v. State</u>, 227 So. 3d 674, 678 (Fla. 1st DCA 2017) ("If a statement is offered to show the effect on the listener rather than the truth of the statement, as was the case in this instance, it is not hearsay."); <u>North v. State</u>, 221 So. 3d 1235, 1237 (Fla. 2d DCA 2017) (recognizing that "an out-of-court statement may be admissible to establish the material effect that statement had on a listener – regardless of whether that statement was true or not"); <u>Jenkins v. State</u>,

10

189 So. 3d 866, 867 (Fla. 4th DCA 2015) ("Because the excluded testimony was not being introduced for the truth of the matter asserted but rather for the effect on the listener, we find that the trial court erred in excluding the statement as hearsay.").

2. *The out-of-court statements by Drs. Sinkovics and Altemose were subject to limitation under section 90.403 of the Florida Statutes.*

Having determined that the out-of-court statements by Drs. Sinkovics and Altemose were not hearsay in this case, this Court turns to whether the statements should nevertheless have been excluded or limited under section 90.403 of the Florida Statutes.

*a.* The trial court's limiting instruction was not effective in this case

Section 90.403 gives the trial court broad discretion to exclude or limit otherwise admissible, relevant evidence if the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2018); see Thigpen v. United Parcel Servs., Inc., 990 So. 2d 639, 645 (Fla. 4th DCA 2008). "When a trial court considers the danger of unfair prejudice against the probative value of evidence, proper considerations include 'the need for the evidence; the tendency of the evidence to suggest an improper basis to the jury for resolving the matter, e.g., an emotional basis; the chain of inference necessary to establish the material fact; and the effectiveness of a limiting instruction.'"

11

David v. Brown, 774 So. 2d 775, 777 (Fla. 4th DCA 2000) (quoting State v. McClain, 525 So. 2d 420, 422 (Fla. 1988)); see also Jones v. Alayon, 162 So. 3d 360, 365 (Fla. 4th DCA 2015) (same).

Here, before Mr. Gloger testified about the Glogers's conversations with Drs. Sinkovics and Altemose, the trial court gave the jury a limiting instruction, directing the jury "not to consider what the doctors told Mr. Gloger [about Mrs. Gloger's diagnosis] for the truth of the matter asserted, just the effect the information had on Mr. Gloger."  While we recognize that "any prejudicial effect generally can be limited by giving instructions cautioning the jury as to the limited use of the testimony," State v. Baird, 572 So. 2d 904, 906 (Fla. 1990), we conclude that, under the particular circumstances of this case, the instant limiting instruction was not effective to assuage the significant prejudice to the tobacco defendants of the jury's hearing that Drs. Sinkovics and Altemose – neither of whom testified at trial – had diagnosed Mrs. Gloger with primary lung cancer.

The origin of Mrs. Gloger's cancer was the critical fact issue presented to the jury during phase 1 of the jury trial.  The second amended complaint alleged that Mrs. Gloger's cancer originated in her lungs, which, if true, would qualify her as a member of the class created in Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006).[5]  Whereas, the tobacco defendants maintained below that Mrs. Gloger

_____

[5]  Under Engle, an individual class member is entitled to certain factual findings against the tobacco defendants "as a matter of res judicata without need of further

12

was not an <u>Engle</u> class member because her cancer allegedly originated in her thymus gland, which is located in a region of the body between the lungs called the mediastinum.

At trial, the lower court permissibly limited the number of experts per side so as to prevent the presentation of cumulative testimony. See <u>Woodson v. Go</u>, 166 So. 3d 231, 234-35 (Fla. 5th DCA 2015). Dr. John Ruckdeschel, the third oncologist to treat Mrs. Gloger for her cancer after Drs. Sinkovics and Altemose, was identified by the estate as its causation expert and testified that Mrs. Gloger had died of cancer that originated in her lung, and that the lung cancer was caused

proof." <u>R.J. Reynolds Tobacco Co. v. Schleider</u>, 44 Fla. L. Weekly D82 (Fla. 3d DCA 2018). The factual findings include:

> (i) "that smoking cigarettes causes" certain named diseases including COPD and *lung cancer*; (ii) "that nicotine in cigarettes is addictive;" (iii) "that the [Engle] defendants placed cigarettes on the market that were defective and unreasonably dangerous;" (iv) "that the [Engle] defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both;" (v) "that the [Engle] defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment;" (vi) "that all of the [Engle] defendants sold or supplied cigarettes that were defective;" (vii) "that all of the [Engle] defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said defendants;" and (viii) "that all of the [Engle] defendants were negligent."

<u>Phillip Morris USA, Inc. v. Douglas</u>, 110 So. 3d 419, 424-25 (Fla. 2013) (quoting <u>Engle</u>, 945 So. 2d at 1276-77) (emphasis added).

13

by smoking. In contrast, the tobacco defendants relied upon the testimony of Dr. Kim Geisenger, a pathologist. Dr. Geisenger testified that Mrs. Gloger's cancer originated in the thymus gland.

The Florida Supreme Court has confirmed that an expert witness cannot testify on direct examination "that the expert relied on consultations with colleagues or other experts in forming his or her opinion." Linn v. Fossum, 946 So. 2d 1032, 1033 (Fla. 2006). "[S]uch testimony is inadmissible because it impermissibly permits the testifying experts to bolster their opinions and creates the danger that the testifying experts will serve as conduits for the opinions of others who are not subject to cross-examination." Id.; cf. Donshik v. Sherman, 861 So. 2d 53, 56 (Fla. 3d DCA 2003) (holding, in a medical malpractice action, that permitting the plaintiff to introduce a treatise "during the plaintiff's case in chief served only to impermissibly bolster the credibility of the plaintiff's experts and diminish the credibility of the defense expert's opinions on the ultimate issue").

By permitting Mr. Gloger to testify that Drs. Sinkovics and Altemose had *also* diagnosed Mrs. Gloger with primary "lung cancer," the trial court, albeit unwittingly, provided the estate the means of both (i) circumventing the court's limitation on the presentation of cumulative expert testimony on the critical fact issue presented in phase 1 (the origin of Mrs. Gloger's cancer), and (ii) bolstering the testimony of the estate's expert, Dr. Ruckdeschel, with the opinions of two

14

colleagues who were not subject to cross-examination at trial. Indeed, immediately after soliciting the subject testimony from Mr. Gloger, the estate's counsel emphasized the fact that all three of Mrs. Gloger's treating oncologists had diagnosed her with primary lung cancer:

Q. Did Dr. Ruckdeschel explain to you what he believed the – her diagnosis and its cause?

A. Yes, he said she had lung cancer and he believed it was from smoking.

Q. Obviously, this was tough news for you and your wife to hear?

A. Yes, she was very weak at that point.

Q. I'm talking about even going back to Dr. Sinkovics, I'm sorry. Going back to Dr. Sinkovics, back to 1995, *the first time you heard it, the second time you heard it, the third time you heard it,* or whenever you heard it.

A. Oh, it was devastating. I – I had no idea. I mean, Irene was, for the most part, very healthy prior to this diagnosis.

(Emphasis added).

In this instance, we conclude that the trial court's limiting instruction was ineffective in alleviating the significant danger that, on hearing the subject testimony from Mr. Gloger, the jury would conflate its primary charge of determining whether Mrs. Gloger died of primary lung cancer, with its concomitant duty of determining Mr. Gloger's entitlement to damages for pain and suffering stemming therefrom.[6] Cf. Diaz v. Fedex Freight East, Inc., 114 So. 3d

224, 227 (Fla. 5th DCA 2012) (concluding that, where liability was at issue, a curative instruction was insufficient to overcome the prejudice created by improper testimony on causation).

   *b.* The trial court should have limited Mr. Gloger's testimony as to the Glogers's conversations with Drs. Sinkovics and Altemose

   "Section 90.403 may be applied to limit only a part of a statement or the details of an event or occurrence while admitting the basic statement or testimony." Charles W. Ehrhardt, 1 Fla. Prac., Florida Evidence § 403.1 (May 2018). Though this principle is most commonly applied in the criminal arena, it is equally applicable in civil cases. See, e.g., Honeywell Intern., Inc. v. Guilder, 23 So. 3d 867, 870 (Fla. 3d DCA 2009) (concluding that the lower court erred in refusing to redact a portion of a letter introduced at trial because it was unfairly prejudicial under section 90.403); MCI Express, Inc. v. Ford Motor Co., 832 So. 2d 795, 801 (Fla. 3d DCA 2002) ("Because the comment, 'Goddamn Cubans,' could easily have been rephrased without altering the meaning of the sentence, or detracting from its ostensible relevance, any probative value was outweighed by the prejudice that resulted from having the jury hear it.").

---

[6] The confusing and misleading nature of the Glogers's conversations with Drs. Sinkovics and Altemose is highlighted by the trial court's pre-trial suggestion that defense counsel simply argue to the jury that the "*doctor that told [Mr. Gloger] that [Mrs. Gloger had lung cancer] was wrong.*" See, Section I., supra.

In this case, the tobacco defendants claim that the trial court could have eliminated the substantial prejudice to the tobacco defendants under a section 90.403 analysis by having Mr. Gloger – when testifying as to his conversations with Drs. Sinkovics and Altemose – simply rephrase the term "lung cancer" to "cancer," "terminal cancer," "deadly cancer," or "however the Court finds is fair and appropriate under the circumstances." We agree. As in MCI Express, Inc., rephrasing the subject testimony in such a manner would not have altered the jury's understanding of the testimony; nor would it have diminished the relevance for which it was offered at trial (i.e., establishing the emotional impact that hearing it had on Mr. Gloger). 832 So. 2d at 801.

Because the trial court had the discretion, under section 90.403, to decide how to limit Mr. Gloger's testimony, we do not decide which iteration of "lung cancer" proposed by the tobacco defendants was appropriate in this case. Rather, we conclude that the trial court abused its discretion in not, in some fashion, limiting this testimony.

*c.* The trial court's failure to limit Mr. Gloger's testimony was not harmless error

A trial court's error in the admission of evidence under section 90.403 is subject to harmless error analysis. See Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1256 (Fla. 2014). "To test for harmless error, the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict.

17

Alternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict." Id.

Here, the origin of Irene Gloger's cancer was of critical importance in this case as a jury finding that she had primary lung cancer would make her an Engle class member, thus, entitling her estate to the phase 1 common core findings in Engle. Engle, 945 So. 2d at 1269. Moreover, Question 1 of the jury verdict form, as phrased, essentially provided that the estate could not prevail in this action unless the jury found that Mrs. Gloger had primary lung cancer:

**1. Was Irene Gloger addicted to cigarettes containing nicotine, and if so, was such addiction a legal cause of lung cancer and death?**

YES _____ NO _____

*If your answer to Question 1 was NO, please proceed no further except to sign and date this verdict form and return it to the courtroom. If your answer to Question 1 was YES, please proceed to Question 2.*

Given these circumstances, we cannot conclude that the error was harmless, i.e., that there was no reasonable possibility that the error did not contribute to the substantial jury verdict entered in favor of the estate in this case.

### III.   CONCLUSION

Because the subject out-of-court statements were not introduced to prove that Irene Gloger's cancer originated in the lung, but to demonstrate the emotional impact on Mr. Gloger of hearing, for the first time, that his wife had cancer, the

18

statements were not hearsay. Such evidence was both relevant and material in this wrongful death action to support Mr. Gloger's damages claim and was, therefore, admissible. Nevertheless, under the particular circumstances of this Engle progeny case, the out-of-court statements were subject to limitation under section 90.403 because the limiting instruction given by the trial court did not effectively diminish the significant prejudice to the tobacco defendants of the jury's hearing that Drs. Sinkovics and Altemose had diagnosed Mrs. Gloger with primary lung cancer caused by smoking cigarettes.

We find that the trial court abused its discretion by failing to limit Mr. Gloger's testimony (i.e., rephrasing the term "lung cancer") in a manner that would eliminate the substantial prejudice to the tobacco defendants, without altering the jury's understanding of the testimony or diminishing the relevance for which it was offered. This error was not harmless. Accordingly, we reverse the final judgment and remand for a new trial to be conducted consistent with this opinion.

Reversed and remanded.